UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WOODWARD HARBOR L.L.C., ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-5824** |
| **CITY OF MANDEVILLE, ET AL.** | **SECTION "O"** |

### ORDER AND REASONS

Before the Court in this regulatory-takings case is the Federal Rule of Civil Procedure 12(b)(6) motion[1] of Defendant Jason Zuckerman to dismiss the claims that Plaintiffs Woodward Harbor L.L.C. and LSU Health Foundation New Orleans assert against him. After the five-member Mandeville City Council unanimously voted against a mixed-use development slated for the shores of Lake Pontchartrain, the developer (Woodward Harbor) and the landowner (LSU Health) sued the City of Mandeville and Mandeville City Councilman Jason Zuckerman under 42 U.S.C. § 1983 and Louisiana law. Their claims against Zuckerman arise from his alleged conduct as a councilmember evaluating and voting on a proposed ordinance. Zuckerman moves the Court to dismiss those claims based on assorted immunities, but the Court need only address one—qualified immunity. Woodward and LSU Health have not met their burden to plead facts sufficient to overcome Zuckerman's qualified-immunity defenses under federal and Louisiana law. So they fail to state any claims against him. Accordingly, for that reason and those that follow, Zuckerman's motion to dismiss is **GRANTED**.

---

[1] ECF No. 15.

## I.  BACKGROUND

This regulatory-takings case arises from the Mandeville City Council's 5–0 vote against an ordinance that would have approved the Sucette Harbor Project—"a planned development along the shores of Lake Pontchartrain" that envisioned an 82-room hotel, 201 age-restricted apartments, a restaurant, and a 103-boat marina.[2]

Plaintiff LSU Health Foundation owns the lakefront land slated to serve as the site for the Sucette Harbor Project.[3] Plaintiff Woodward Harbor leases that land from LSU Health Foundation.[4] The Court refers to the Plaintiffs collectively as "Sucette."

On behalf of LSU Health Foundation, Woodward Harbor proposed the Sucette Harbor Project in an application for a planned district and conditional-use approval permit submitted to the City of Mandeville Planning and Zoning Commission.[5]

The Commission recommended approving the application (with certain conditions) and reported its recommendation to the Mandeville City Council.[6]

For the City Council's consideration, Sucette prepared a proposed ordinance, Ordinance 23-16.[7] If passed, Ordinance 23-16 would have conditionally approved the site plan for the Sucette Harbor Project; required the property to be re-zoned from

---

[2] ECF No. 1 at ¶ 19.
[3] ECF No. 1-5 at 1, 3.
[4] ECF No. 1
[5] ECF No. 1-5 at 1; ECF No. 1 at ¶ 49.
[6] ECF No. 1 at ¶¶ 51–53.
[7] ECF No. 1 at ¶ 53; ECF No. 15-2 at 1. The Court may consider Ordinance 23-16 in its Rule 12(b)(6) review because Ordinance 23-16 is attached to Zuckerman's motion to dismiss, referenced in Sucette's complaint, and central to Sucette's claims. *See generally Villareal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766–67 (5th Cir. 2016) (quotation and citation omitted).

Planned Residential District to Planned Combined Use District; and granted a conditional use permit for the development of the entire site.[8]

The Mandeville City Council held nine public hearings on whether to approve Ordinance 23-16 and thus the Sucette Harbor Project.[9] Sucette alleges that those hearings featured "uncontrollable, irrational debate," with councilmembers expressing "personal opinions regarding the underlying land use regulations";[10] that councilmembers "could not even agree on the proper interpretation of procedural rules, including Robert's Rules of Order";[11] and that one particular public hearing "was utter chaos and a complete violation of Louisiana's laws on open meetings."[12]

Sucette paints one member of the Mandeville City Council—Defendant Jason Zuckerman—as the Sucette Harbor Project's chief antagonist.[13] Sucette alleges Zuckerman "t[ook] the lead in unrestrained opposition" to Ordinance 23-16 and "set out to kill the project on the basis of [his] personal belief" that it should not include a hotel or apartments.[14] Among other complaints about Zuckerman's conduct in the course of his consideration of Ordinance 23-16, Sucette alleges that Zuckerman—

- "overtly sought input" from lawyers other than the Mandeville City Attorney;[15]

---

[8] ECF No. 15-2 at 1.
[9] ECF No. 1 at ¶ 53.
[10] *Id.* at ¶¶ 58–58 (quotation omitted).
[11] *Id.* at ¶ 60.
[12] *Id.*
[13] *Id.* at ¶ 54.
[14] *Id.*
[15] *Id.* at ¶ 59.

3

- "solicited input" from an architect "to glean rhetorical ammunition in opposition to the project . . . with the intent to undermine the City Council's understanding of Sucette Harbor";[16]

- "improper[ly] use[d]" Robert's Rules of Order to deny Sucette "a fair and impartial consideration of their development";[17]

- engaged in "intentional antics" that "denied" other councilmembers "the ability to modify" Ordinance 23-16;[18]

- "ignored objective standards on density"[19] and "substituted [his] own opinions concerning traffic or density for those of professional engineers, planners, and architects";[20]

- "fabricated a method of calculating the density for residential units for the proposed project that disregarded a majority of the land area involved";[21] and

- "substituted his personal preferences and bias to kill the project[.]"[22]

Ultimately, the five-member Mandeville City Council unanimously voted against Ordinance 23-16—"kill[ing]" the Sucette Harbor Project.[23]

Sucette sued a month later. Its eight-count complaint asserts assorted claims against the City and Zuckerman under federal and Louisiana law.

***Count One—Declaratory Relief.***[24] Sucette seeks a declaratory judgment (a) declaring its application for a conditional-use permit approved; (b) allowing it to

---

[16] *Id.*
[17] *Id.* at ¶ 62.
[18] *Id.* at ¶ 63.
[19] *Id.* at ¶ 66.
[20] *Id.* at ¶ 65.
[21] *Id.* at ¶ 68.
[22] *Id.* at ¶ 69.
[23] *Id.* at ¶ 72.
[24] *Id.* at ¶¶ 92–98.

4

"proceed forward with developing Sucette Harbor"; and (c) declaring that its development plans "are appropriate and allowable under Mandeville's laws[.]"[25]

***Count Two—Alternative Declaratory Relief.***[26] If Sucette is not entitled to the declaratory relief requested in count one, Sucette asks the Court for a declaratory judgment that (a) the City violated Louisiana Open Meeting Laws; (b) "the review process" violated Sucette's procedural-due-process rights under the Fourteenth Amendment to the U.S. Constitution; (c) Zuckerman "improperly calculated density for the . . . project"; and (d) the City's Comprehensive Land Use Regulations Ordinance ("CLURO") "is unconstitutionally overbroad, vague, and ambiguous[.]"[27]

***Count Three—Federal Regulatory-Takings Claim.***[28] Sucette asserts that the City and Zuckerman violated Sucette's rights under the Takings Clause of the Fifth Amendment to the U.S. Constitution, as incorporated by the Fourteenth Amendment, by "over-regulat[ing] the subject property" and thus "tak[ing] [the] property out of commerce."[29] In support, Sucette alleges that "no future developer could possibly satisfy the whims of [the City and Zuckerman] on property zoned Planned District," and that the City and Zuckerman "lack the institutional knowledge and control over the public in their forums to conduct hearings on land zoned Planned District."[30] Sucette further alleges that the City and Zuckerman denied its development plans for the project "based on Zuckerman's illegal density calculation,"

---

[25] *Id.* at ¶¶ 97–98.
[26] *Id.* at ¶¶ 99–100.
[27] *Id.* at ¶ 100.
[28] *Id.* at ¶¶ 101–110.
[29] *Id.* at ¶ 103.
[30] *Id.* at ¶ 104.

5


"inappropriate consideration" of a particular zoning district, "personal aesthetic considerations," "erroneous concerns over potential traffic," "inaccurate presumptions about the noise on the . . . property," "an incorrect interpretation of Robert's Rules of Order," and "unadvertised (and inaccurate) comments from the public."[31]

***Count Four—Louisiana-Law Regulatory-Takings Claim***.[32] Sucette alleges that the "rejection" of its "development plan" amounts to a regulatory taking without just compensation that violates Sucette's rights under Sections 1 and 4 of Article I of the Louisiana Constitution.[33] Without elaboration, Sucette concludes that the rejection of the Sucette Harbor Project "has deprived the site of all economically beneficial use."[34] In similarly conclusion fashion, Sucette alleges that Zuckerman and the City "rejected the development . . . based on illegal motives and arguments"; that the City Council's "basis for decision-making is not grounded on any legitimate or legally cognizable restrictions imposed by the reasonable exercise of the City's policy power"; and that the Council's refusal to approve the project "is a *de facto* taking[.]"[35]

***Count Five—Substantive-Due-Process Claim.***[36] Sucette alleges that Zuckerman and the City violated Sucette's right to substantive due process under the Fourteenth Amendment to the U.S. Constitution by "denying the Sucette Harbor development plan" in a way that "exceeds the scope of their decision-making

---

[31] *Id.* at ¶ 105.
[32] *Id.* at ¶¶ 111–115.
[33] *Id.* at ¶ 113.
[34] *Id.* at ¶ 114.
[35] *Id.*
[36] *Id.* at ¶¶ 116–123.

capacity[.]"³⁷ Without elaboration or supporting facts, Sucette concludes that the "reasons for denying the Sucette Harbor development project were arbitrary and capricious";³⁸ that the rejection of the development plan "was outside [Zuckerman's and the City's] scope of authority under the CLURO and [Section 33:101 of the Louisiana Revised Statutes]";³⁹ that the rejection of the development plan "bears no relationship to any legitimate governmental purpose";⁴⁰ that Sucette's "practical economic uses of the site have been eliminated";⁴¹ and that Zuckerman and the City "have substantially interfered with [Sucette's] investment-backed expectations."⁴²

***Count Six—Procedural-Due-Process Claim.***⁴³ Sucette alleges that Zuckerman and the City violated Sucette's procedural-due-process rights under the Fourteenth Amendment to the U.S. Constitution by denying Sucette "notice and a fair and impartial review of their proposed project."⁴⁴ Sucette complains that the City Council violated the Louisiana Open Meetings Law in unspecified ways and held "chaotic" and "disorganized" meetings on the project.⁴⁵ Sucette further alleges that Zuckerman and the City "had no intention of approving" a planned development on the property, and Sucette thus reasons that it was "denied a fair and unbiased forum within which to present [its] plan for the Sucette Harbor development[.]"⁴⁶

---

³⁷ *Id.* at ¶ 119.
³⁸ *Id.* at ¶ 120.
³⁹ *Id.* at ¶ 121.
⁴⁰ *Id.* at ¶ 122.
⁴¹ *Id.*
⁴² *Id.*
⁴³ *Id.* at ¶¶ 124–130.
⁴⁴ *Id.* at ¶127.
⁴⁵ *Id.* at ¶¶ 126–27.
⁴⁶ *Id.* at ¶ 129.

***Count Seven—Equal-Protection Claim.***[47] Sucette alleges that Zuckerman and the City violated Sucette's rights under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution by "purposely and intentionally treat[ing] [Sucette's] proposed marina completely differently than other marinas in the city limits."[48] Sucette alleges that "marina owners on the east side of Mandeville have been allowed to leave sunken vessels in waterways and to not repair their properties."[49] According to Sucette, the City and Zuckerman "inserted onerous provisions surrounding the proposed marina that would prevent any financing of the project," including a "draconian penalty" for sunken vessels not timely removed that "does not exist for any other marina in Mandeville."[50]

***Count Eight—Section 1983 Claim.***[51] Sucette alleges that the City and Zuckerman are liable under Section 1983.[52] In support, Sucette alleges that "Defendants constantly met with members of the public solely for developing strategies to impede, confuse, and incorrectly analyze CLURO provisions to prevent commercial development."[53] Among other complaints about Zuckerman's conduct while considering Ordinance 23-16, Sucette alleges that Zuckerman (a) "coordinated with a local architect . . . for purposes of incorrectly calculating density";[54] (b) "acted on his own personal opinions and his personal aesthetic preferences";[55] (c) "did not

---

[47] *Id.* at ¶¶ 131–137.
[48] *Id.* at ¶ 133.
[49] *Id.*
[50] *Id.* at ¶ 134.
[51] *Id.* at ¶¶ 138–144.
[52] *Id.* at ¶ 140.
[53] *Id.* at ¶ 139.
[54] *Id.* at ¶ 140.
[55] *Id.*

8

fairly and impartially review the site plans";[56] (d) "just tr[ied] to secure future votes" "nearly every time [he] spoke" at Council meetings;[57] (e) "conducted inappropriate public meetings";[58] (f) "highjacked meetings, grandstanded for [his] constituents, [and] rudely questioned and insulted the City Attorney and Planning Director";[59] and (g) "substituted his own personal agenda or narrative at the Council's meetings."[60]

Based on these allegations and others, Sucette seeks the declaratory relief mentioned above, compensatory damages for the alleged taking and for the cost of Sucette's application efforts, and attorney's fees under 42 U.S.C. § 1988.[61]

Three motions to dismiss followed.[62] In the one now before the Court, Zuckerman moves the Court to dismiss all of the claims Sucette asserts against him for failure to state a claim under Rule 12(b)(6), contending that he enjoys absolute legislative immunity as well as qualified immunity.[63] Sucette opposes.[64]

## II. LEGAL STANDARD

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint that does not satisfy Rule 8(a)(2)'s pleading standard fails to state a claim upon which relief can be granted. *See generally* FED. R. CIV. P. 12(b)(6). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than

---

[56] *Id.* at ¶ 141.
[57] *Id.*
[58] *Id.* at ¶ 142.
[59] *Id.* at ¶ 143.
[60] *Id.*
[61] *Id.* at 37–38 (prayer).
[62] ECF No. 15; ECF No. 16; ECF No. 17.
[63] ECF No. 15.
[64] ECF No. 30.

9

an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitations of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although '[courts] accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff, conclusory allegations unwarranted factual inferences, or legal conclusions are not accepted as true.'" *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quoting *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023)).

## III. ANALYSIS

Zuckerman contends that Sucette fails to state any claims against him because he enjoys absolute legislative immunity and qualified immunity. The Court dismisses Sucette's claims against Zuckerman because Sucette fails to carry its burden to plead facts—not mere legal conclusions—sufficient to overcome Zuckerman's properly raised qualified-immunity defense. Because the Court resolves Zuckerman's motion

10

based on qualified immunity under federal and Louisiana law, the Court does not reach Zuckerman's arguments for dismissal based on absolute legislative immunity.

### A. Qualified Immunity from Sucette's Federal Claims

Sucette fails to state any Section 1983 claims against Zuckerman because Zuckerman enjoys qualified immunity under federal law. "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Hughes v. Garcia*, 100 F.4th 611, 618 (5th Cir. 2024) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Zuckerman properly raises a qualified-immunity defense at the pleadings stage, so Sucette has the burden to plead facts sufficient to overcome both prongs of the defense. *See Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023). To do that, Sucette must plead facts allowing a reasonable inference that (1) Zuckerman violated a statutory or constitutional right of Sucette's; and (2) the right was clearly established at the time of Zuckerman's alleged conduct. *See Edmiston v. Borrego*, 75 F.4th 551, 558 (5th Cir. 2023). The Court "can analyze the prongs in either order or resolve the case on a single prong." *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020) (quotation omitted). Because the Court "deems [it] most expeditious" to resolve Zuckerman's motion on the "clearly established" prong, *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) (per curiam) (citation omitted), the Court does not consider the first prong. *Accord, e.g.*, *Cunningham*, 983 F.3d at 194.

Sucette fails to plead facts sufficient to overcome the "clearly established" prong of Zuckerman's qualified-immunity defense. "The 'clearly established' prong is difficult to satisfy." *Id.* at 191 (citing *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir.

11

2019)). "A right is 'clearly established' only if it 'is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). "A case 'directly on point' is not required, but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "Ultimately, 'the dispositive question is whether the violative nature of the *particular* conduct is clearly established.'" *Id.* (quoting *Mullenix*, 577 U.S. at 12). The Court "undertake[s] that inquiry 'in [the] light of the specific context of the case, not as a broad general proposition.'" *Id.* (quoting *Mullenix*, 577 U.S. at 12).

The Court starts the "clearly established" analysis by identifying Zuckerman's "*particular* conduct," *Mullenix*, 577 U.S. at 12, based on the well-pleaded—*i.e.*, non-conclusory—allegations of Sucette's complaint. *Accord, e.g.*, *Cunningham*, 983 F.3d at 193 (beginning the "clearly established" analysis by "describing the particular conduct for which [the plaintiff] seeks to hold [the defendant] liable"). Here, Zuckerman's "*particular* conduct," *Mullenix*, 577 U.S. at 12, includes these alleged acts in connection with Zuckerman's evaluation of, and voting on, Ordinance 23-16—

- "overtly s[eeking] input" from lawyers other than the Mandeville City Attorney;[65]

- "solicit[ing] input" from an architect "to glean rhetorical ammunition in opposition to the project . . . with the intent to undermine the City Council's understanding of Sucette Harbor";[66]

- "improper[ly] us[ing]" Robert's Rules of Order;[67]

---

[65] ECF No. 1 at ¶ 59.
[66] *Id.*
[67] *Id.* at ¶ 62.

- "ignor[ing] objective standards on density"[68] and "substitut[ing] [his] own opinions concerning traffic or density for those of professional engineers, planners, and architects";[69]

- "coordinat[ing] with a local architect . . . for purposes of incorrectly calculating density";[70]

- "act[ing] on his own personal opinions and his personal aesthetic preferences";[71]

- "not fairly and impartially review[ing] the site plans";[72]

- "just tr[ying] to secure future votes" "nearly every time [he] spoke" at Council meetings;[73]

- "conduct[ing] inappropriate public meetings";[74]

- "highjack[ing] meetings, grandstand[ing] for [his] constituents, [and] rudely question[ing] and insult[ing] the City Attorney and Planning Director";[75] and

- "substitut[ing] his own personal agenda or narrative at the Council's meetings."[76]

Considering that "*particular* conduct," *Mullenix*, 577 U.S. at 12, the Court concludes that Zuckerman enjoys qualified immunity because Sucette fails to carry its burden to point to any clearly established law that gave Zuckerman "fair warning" that his alleged actions were unlawful. *Salazar v. Molina*, 37 F.4th 278, 285 (5th Cir. 2022) (quotation and citation omitted). Sucette "fails to cite any case that governs the facts here and holds that sufficiently similar conduct violates the Constitution."

---

[68] *Id.* at ¶ 66.
[69] *Id.* at ¶ 65.
[70] *Id.* at ¶ 140.
[71] *Id.*
[72] *Id.* at ¶ 141.
[73] *Id.*
[74] *Id.* at ¶ 142.
[75] *Id.* at ¶ 143.
[76] *Id.*

13

*Bakutis v. Dean*, 129 F.4th 299, 305 (5th Cir. 2025). More specifically, Sucette cites no published[77] Fifth Circuit case,[78] or any Supreme Court opinion, holding that a councilmember violated a property owner's or property developer's statutory or constitutional rights in the course of considering, and voting on, a proposed commercial development through conduct that remotely resembles Zuckerman's alleged conduct here. That ends the prong-two inquiry.

Sucette's counterarguments fail. First, Sucette contends that Zuckerman is not entitled to qualified immunity because "an ordinary person should have known that Zuckerman was violating [the] CLURO."[79] This argument fails because Sucette cites nothing to support it. In all events, a violation of the CLURO does not equal a violation of the U.S. Constitution; Sucette has not shown that Zuckerman's alleged violation of the CLURO is itself a violation of clearly established federal law.

Sucette next invokes "[t]hree fundamental Louisiana Supreme Court zoning decisions" that Sucette says clearly establish the law.[80] But none does. First and most fundamentally, Sucette cites no authority that empowers the Court to rely on *state*

---

[77] "Because nonprecedential opinions do not establish any binding law for the circuit, they cannot be the source of clearly established law for qualified immunity analysis." *Marks v. Hudson*, 933 F.3d 481, 486 (5th Cir. 2019) (quotation omitted).

[78] The Supreme Court "has never held" that circuit precedent can clearly establish the law. *Nerio v. Evans*, 974 F.3d 571, 576 n.2 (5th Cir. 2020) (citation and quotation omitted). But the Supreme Court and the Fifth Circuit have "assum[ed]" that circuit precedent can do so. *See, e.g.*, *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam); *Salazar*, 37 F.4th at 286 (citing *Rivas-Villegas*, 595 U.S. at 5). The Court makes that same "assumption" here. *Salazar*, 37 F.4th at 286 (citation omitted).

[79] ECF No. 30 at 17.

[80] *Id.* at 19 (first citing *Morton v. Jefferson Par. Council*, 419 So. 2d 431 (La. 1982); then citing *Gaudet v. Econ Super Mkt., Inc.*, 112 So. 2d 720 (La. 1959); and then citing *McCauley v. Albert E. Briede & Son*, 90 So. 2d 78 (La. 1956)).

14

cases to discern clearly established *federal* law for purposes of evaluating Zuckerman's qualified-immunity defense to Sucette's Section 1983 claims.

But even if Sucette's state cases could clearly establish federal law in theory, they do not do so in fact. None of them provides fair warning that Zuckerman's alleged conduct violated the U.S. Constitution because none of them involves conduct remotely resembling Zuckerman's alleged conduct here. Sucette's state cases involve constitutional challenges to zoning ordinances; none considers the individual-capacity liability of one member of a multi-member legislative or quasi-legislative body for constitutional violations the member allegedly committed through his evaluation of, and vote against, an ordinance for a proposed commercial development.[81] So Sucette's state cases necessarily "do not reflect clearly established law under the facts presented in *this* case." *Cunningham*, 983 F.3d at 192.

Sucette's two Fifth Circuit cases are equally off-point.[82] The first of the pair, *Piotrowski*, held that a city was not liable under Section 1983 for alleged constitutional violations arising from its failure to prevent the plaintiff's former boyfriend from trying to kill her. *See* 237 F.3d at 572, 585. The facts presented there are nothing like the facts alleged here. Sucette's second case—*Modica*—is as far afield as its first. *Modica* considered claims for First Amendment retaliation and violations

---

[81] *See Morton*, 419 So. 2d at 433 (suit against a parish council challenging the constitutionality of a zoning ordinance); *Gaudet*, 112 So. 2d at 720–21 (suit against a private-business beneficiary of a special-use permit challenging the constitutionality of the city council ordinance granting the permit); *McCauley*, 90 So. 2d at 79 (suit against a city and the private-business beneficiary of a special-use permit challenging the constitutionality of the ordinance granting the permit).
[82] ECF No. 30 at 21 (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)); *id.* at 22–23 (citing *Modica v. Taylor*, 465 F.3d 174, 179–80 (5th Cir. 2006)).

of the Family Medical Leave Act that a former inspector of the Texas Cosmetology Commission brought against the Commission's Executive Director. *See* 465 F.3d at 178–79. To describe *Modica* is to distinguish it from this regulatory-takings case.

Sucette has the "burden to produce binding caselaw establishing" that Zuckerman's particular alleged conduct violated the U.S. Constitution. *Bakutis*, 129 F.4th at 306. Sucette fails to do so. Because Sucette "fail[s] to cite adequate authority at a sufficiently high level of specificity to put [Zuckerman] on notice that his conduct is definitively unlawful," *Cunningham*, 983 F.3d at 194 (quotation and citation omitted), Zuckerman enjoys qualified immunity. The Court therefore grants Zuckerman's motion to dismiss the Section 1983 claims Sucette asserts against him.

### B. Qualified Immunity from Sucette's Louisiana-Law Claim

Sucette fails to state any claim against Zuckerman under the Louisiana Constitution because Zuckerman enjoys qualified immunity under Louisiana law. "Louisiana applies qualified immunity principles to state constitutional law claims based on '[t]he same factors that compelled the United States Supreme Court to recognize a qualified good faith immunity for state officers under § 1983.'" *Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005) (quoting *Moresi v. Dep't of Wildlife & Fisheries*, 567 So. 2d 1081, 1093 (La. 1990)). So "federal qualified immunity principles may be applied to claims under the Louisiana [C]onstitution '[i]nasmuch as [they] parallel entirely the § 1983 allegations.'" *Magnolia Island Plantation, L.L.C. v. Whittington*, 29 F.4th 246, 251 (5th Cir. 2022) (quoting *Roberts*, 397 F.3d at 296).

16

Sucette's state constitutional claim against Zuckerman "parallel[s] entirely" Sucette's federal constitutional claims against Zuckerman. *Id.* (quotation omitted). Both sets of claims rest on the same alleged conduct.[83] And Sucette does not dispute that the qualified-immunity analysis is the same for both sets of claims.[84]

Accordingly, because the alleged facts underlying both sets of claims are the same, and because it is undisputed that the qualified-immunity defenses under state and federal law are the same for all relevant purposes here, Zuckerman enjoys qualified immunity from Sucette's claims under the Louisiana Constitution for essentially[85] the same reasons he enjoys qualified immunity from Sucette's Section 1983 claims. *Accord, e.g.*, *Roberts*, 397 F.3d at 296 (holding that police chief enjoyed qualified immunity from claims asserted against him under the Louisiana Constitution "inasmuch as the plaintiffs' claims under state constitutional law parallel entirely the § 1983 allegations"); *Magnolia Island Planation*, 29 F.4th at 251 (holding that sheriff enjoyed qualified immunity from claims asserted against him under the Louisiana Constitution for the same reasons he enjoyed qualified immunity

---

[83] *Compare* ECF No. 1 at ¶¶ 111–115 (takings claim under the Louisiana Constitution) *with id.* at ¶¶ 101–110 & 116–144 (claims for violations of the U.S. Constitution).

[84] *See* ECF No. 30 at 24–25 (Sucette asserting that Zuckerman is not entitled to qualified immunity from Sucette's state-law claims for the same reasons he is not entitled to qualified immunity from Sucette's Section 1983 claims).

[85] There is one potential analytical distinction, but it makes no difference here. As explained in Section III(A), the *Louisiana* cases Sucette cites cannot, as a matter of law, clearly establish *federal* constitutional law for purposes of Zuckerman's federal qualified-immunity defense. When it comes to Zuckerman's Louisiana-law qualified-immunity defense, however, the Court assumes *arguendo* that Sucette's Louisiana cases can, in theory, clearly establish Louisiana constitutional law. Even so, none of Sucette's Louisiana cases satisfies the clearly established law requirement for purposes of overcoming Zuckerman's Louisiana-law qualified-immunity defense because, as explained in Section III(A), none of those Louisiana cases involves conduct similar enough to Zuckerman's alleged conduct to provide Zuckerman fair warning that his alleged actions were unlawful.

17

from claims asserted against him under the U.S. Constitution). So the Court grants Zuckerman's motion to dismiss the Louisiana-law claim asserted against him.[86]

### C.     Leave to Amend

The Court dismisses all of Sucette's claims against Zuckerman with prejudice and without leave to amend. That is for two independent reasons.

First, Sucette has not properly moved for leave to amend. Sucette relegates its request to a one-sentence footnote asking for "an opportunity to amend the [c]omplaint to cure any shortfall in pleading any cause of action[.]"[87] But "a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1170 (5th Cir. 2022) (quotation omitted); *cf. Porretto v. City of Galveston Park Bd. of Trs.*, 113 F.4th 469, 491 (5th Cir. 2024) (affirming denial of "bare bones" request in motion-to-dismiss opposition for "an opportunity to amend the [c]omplaint if the Court deems additional factual allegations are necessary" (quotation omitted)).

Second, even if Sucette's bare, footnoted request were a proper motion for leave, the Court would still deny Sucette leave to amend because Sucette gives no indication that it could plead facts sufficient to overcome Zuckerman's qualified-

---

[86] The failure of Sucette's substantive claims dooms its claims for declaratory relief. That is because claims for declaratory relief "are not freestanding; they must be supported by some underlying cause of action." *Reyes v. N. Tex. Tollway Auth., (NTTA)*, 861 F.3d 558, 565 n.9 (5th Cir. 2017) (quotation and citation omitted); *accord Starrett v. City of Richardson*, 766 F. App'x 108, 112 (5th Cir. 2019) (per curiam) (affirming Rule 12(b)(6) dismissal of declaratory-relief request and reasoning that the request necessarily failed because the plaintiff failed to state any substantive claims).

[87] ECF No. 30 at 25 n.85.

immunity defenses. Sucette failed to cite any precedent of any court that clearly establishes the unlawfulness of Zuckerman's particular alleged conduct. Indeed, Sucette could not point the Court to any opinion of any court holding a member of a legislative or quasi-legislative body liable for constitutional violations in circumstances remotely resembling those alleged here. "The rule is that 'a defendant's entitlement to qualified immunity should be determined at the earliest possible stage of the litigation'—full stop." *Carswell v. Camp*, 54 F.4th 307, 312 (5th Cir. 2022) (quoting *Ramirez*, 3 F.4th at 133). Given "the importance of resolving immunity questions at the earliest possible stage in litigation," *Pearson*, 555 U.S. at 231–32, and Sucette's failure to give any indication that it could plead facts sufficient to overcome Zuckerman's qualified-immunity defenses, the Court would deny Sucette leave to amend even if its one-sentence, footnoted request amounted to a proper motion for leave to amend. For this second independent reason, the Court's dismissal of the claims against Zuckerman is with prejudice and without leave to amend.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Zuckerman's Rule 12(b)(6) motion[88] to dismiss is **GRANTED**. Sucette's claims against Zuckerman are **DISMISSED WITH PREJUDICE** for failure to state a claim because Zuckerman is immune.

New Orleans, Louisiana, this 27th day of March, 2025.

                                        BRANDON S. LONG
                                        UNITED STATES DISTRICT JUDGE

---

[88] ECF No. 15.