## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WOODWARD HARBOR L.L.C., ET AL.**                    **CIVIL ACTION**

**VERSUS**                                            **NO. 23-5824**

**CITY OF MANDEVILLE, ET AL.**                        **SECTION "O"**

## ORDER AND REASONS

Before the Court in this regulatory-takings case are the motions[1] of Defendant the City of Mandeville to dismiss the claims that Plaintiffs Woodward Harbor L.L.C. and LSU Health Foundation New Orleans (together, "Sucette") assert against it under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). After the Mandeville City Council unanimously voted against the Sucette Harbor Project—a mixed-use development slated for the shores of Lake Pontchartrain—the developer (Woodward Harbor) and the landowner (LSU Health) sued the City of Mandeville and Mandeville City Councilman Jason Zuckerman under 42 U.S.C. § 1983 and Louisiana law. Their principal theory is that the City Council's failure to approve the development plan for this one project is an unconstitutional regulatory taking; they also claim that Zuckerman and the City violated their due-process and equal-protection rights along the way. The Court dismissed with prejudice all of the claims against Zuckerman because he is immune. Only the claims against the City remain.

---

[1] ECF No. 16; ECF No. 17.

The City moves to dismiss on two grounds. The first is jurisdictional: The City says Sucette's regulatory-takings claims—and Sucette's factually intertwined due-process and equal-protection claims—are prudentially unripe because Sucette has not met the "finality requirement" for them. Not so. Finality poses no high bar; the requirement is a "relatively modest" one. *Pakdel v. City & Cnty. of S.F.*, 594 U.S. 474, 478 (2021) (per curiam). And it is met here. "[T]here is no question about" the City's position on the Sucette Harbor Project—the City Council rejected it 5–0. *Id.*

The second ground fares better. Under Rule 12(b)(6), the City says Sucette fails to state claims against it for declaratory relief, regulatory takings under federal and Louisiana law, violations of due process, and violations of Section 1983. Most (but not all) of the City's arguments are correct—and some of them Sucette does not even rebut. The Court makes seven Rule 12(b)(6) holdings; summaries of them follow.

First, Sucette fails to state a regulatory-takings claim against the City under the Louisiana Constitution because Sucette fails to plead facts plausibly establishing that Sucette had a recognized species of property right under Louisiana law in the City Council's approval of Sucette's development plan for the Sucette Harbor Project.

Second, Sucette fails to state a *Lucas* categorical regulatory-takings claim against the City under the United States Constitution because Sucette fails to plead facts—rather than mere conclusions—plausibly establishing that the City Council's disapproval of this one development plan for the Sucette Harbor Project site permanently deprives that property of all economically beneficial use.

Third, Sucette fails to state a *Penn Central* regulatory-takings claim against the City under the United States Constitution because Sucette fails to plead facts plausibly establishing that any *Penn Central* factor favors Sucette.

Fourth, Sucette fails to state any due-process claims against the City under the United States Constitution because Sucette fails to plead facts plausibly establishing that Sucette had a property interest protected by the Due Process Clause in the City Council's approval of its development plan for the Sucette Harbor Project.

Fifth, Sucette's Section 1983 claim for municipal liability does not fail for lack of an "official policy" because, fairly read, Sucette's complaint alleges that the City Council—the authorized land-use decisionmaker for the City—denied Sucette's development application in alleged violation of Sucette's constitutional rights.

Sixth, the Court declines to exercise its discretion to dismiss Sucette's requests for declaratory relief as duplicative of other claims because one constitutional claim will survive this opinion (the equal-protection claim), and Sucette's requests for declaratory relief appear distinct from Sucette's request for compensatory damages.

Finally, the Court's Rule 12(b)(6) dismissal of Sucette's claims for regulatory takings and violations of due process is with prejudice and without leave to amend for the independent reasons that (1) Sucette's one-sentence, footnoted amendment request is not a proper motion for leave under Rule 15(a); and (2) there is no indication that Sucette could plead facts sufficient to state plausible takings and due-process claims against the City or to otherwise fix the legal flaws outlined in this opinion.

Accordingly, for these reasons and those that follow, the City's Rule 12(b)(1) motion to dismiss is **DENIED** and the City's Rule 12(b)(6) motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

This regulatory-takings case arises from the Mandeville City Council's 5–0 vote against an ordinance approving the Sucette Harbor Project—"a planned development along the shores of Lake Pontchartrain" that originally envisioned an 82-room hotel, 201 age-restricted apartments, a restaurant, and a 103-boat marina.[2]

LSU Health owns the lakefront land slated to serve as the site for the Sucette Harbor Project.[3] Woodward Harbor leases that land from LSU Health.[4]

The Sucette Harbor Project was evaluated under Mandeville's Comprehensive Land Use Regulations Ordinance (the "CLURO").[5] One relevant zoning designation under the CLURO is "Planned District" or "PD."[6] There are four subcategories of Planned District zoning under the CLURO, but only two are directly relevant to the Sucette Harbor Project: Planned Residential District ("PRD") and Planned Combined Use District ("PCUD").[7] The City treated the Sucette Harbor Project site as being zoned PRD, such that only residential uses would be allowed absent a zoning change.[8]

---

[2] ECF No. 1 at ¶ 19.
[3] ECF No. 1-5 at 1, 3.
[4] ECF No. 1
[5] *Id.* at ¶ 16.
[6] ECF No. 16-3 at 13 (§ 7.5.15.1).
[7] *Id.*
[8] ECF No. 16-4 at 5; ECF No. 16-2 at 3.

According to the CLURO, the Planned District zoning designation aims "to provide for an improved level of aesthetics, safety and environmental sensitivity and design flexibility in conjunction with a site plan review procedure for the approval of residential, commercial, industrial or a combination of these uses on one unified development site[.]"[9] In line with that aim, "[a]ll uses permitted in the Planned District are conditional uses subject to the procedural requirements for Conditional Use Permits and Planned District Zoning[.]"[10] The upshot is that no use is permitted in property zoned Planned District until this process has run its course:

- Filing an "Application[ ] for Conditional Use Permits and Planned District zoning approval[ ] . . . with the Planning Director."[11]

- Public hearings on the application before the City of Mandeville Planning and Zoning Commission.[12]

- Recommendation by the Planning and Zoning Commission to the Mandeville City Council as to the disposition of the application.[13]

- Public hearings on the application before the City Council.[14]

- City Council approval or denial of the application.

- If the application is approved, it is enacted by ordinance.[15]

- If the application is denied, the applicant must wait a year before re-applying "for the same or substantially the same Special Use on the same or substantially the same site."[16]

---

[9] ECF No. 16-3 at 13 (§ 7.5.15.1).
[10] *Id.* at 13 (§ 7.5.15.2).
[11] *Id.* at 3 (§ 4.3.3.4).
[12] *Id.* at 4 (§ 4.3.3.5).
[13] *Id.* at 6 (§ 4.3.3.10).
[14] *Id.* (§ 4.3.3.11).
[15] *Id.* at 14 (§ 7.5.15.3).
[16] *Id.* at 2 (§ 4.3.2.13).

In August 2022, on behalf of LSU Health, Woodward Harbor proposed the Sucette Harbor Project in an application for a planned district and conditional-use approval permit submitted to the Mandeville Planning and Zoning Commission.[17]

As relevant to the motions before the Court, the Mandeville Planning and Zoning Commission treated Woodward Harbor's application as a request for a zoning change—from PRD to PCUD—and as a request for approval of conditional uses to allow, among other things, administrative and business offices, multi-family residential development, a hotel, a restaurant, general retail sales, and a marina.[18]

The Planning and Zoning Commission held six public hearings on the Sucette Harbor Project, stretching from September 2022 to mid-April 2023.[19] By a 4–3 vote, the Planning and Zoning Commission recommended that the City Council approve the application, with three conditions: (1) the plans would include a "pedestrian and bike path"; (2) "[t]he landscaping is inspected by the City to ensure health and viability"; and (3) [t]he plans are reviewed by the City's Design Review Committee."[20]

Consistent with the CLURO, the Planning and Zoning Commission reported its approval recommendation to the five-member Mandeville City Council in mid-April 2023.[21] For the Council's consideration, Sucette prepared a proposed ordinance—Ordinance 23-16.[22] If passed, Ordinance 23-16 would have conditionally

---

[17] ECF No. 1-5 at 1; ECF No. 1 at ¶ 49.
[18] ECF No. 16-4 at 5; ECF No. 16-2 at 3.
[19] ECF No. 1 at ¶ 51.
[20] ECF No. 16-4 at 5.
[21] ECF No. 1 at ¶ 51; ECF No. 16-4 at 5.
[22] ECF No. 16-4 at 1.

approved the plan for the Sucette Harbor Project; required the property to be re-zoned PCUD; and granted a conditional-use permit for the development of the entire site.[23]

From May to September 2023, the City Council held nine public hearings on whether to approve Ordinance 23-16 and thus the Sucette Harbor Project.[24] During those hearings, the Council concluded that the property needed to be rezoned PCUD because the site was zoned PRD (allowing only residential uses), and the Sucette Harbor Project proposed both residential and commercial uses.[25] For its part, Sucette alleges that the Council's conclusion was wrong: Sucette says the site was "already zoned PD" and so no re-zoning should have been required.[26] Sucette adds that the Council's designation of the property as PRD "false[ly] . . . implied that development on the site was limited to residential uses" and "poisoned the public debate."[27]

Sucette lodges assorted complaints about the City Council hearings. According to Sucette, those hearings featured "uncontrollable, irrational debate," with councilmembers expressing "personal opinions regarding the underlying land use regulations";[28] councilmembers "could not even agree on the proper interpretation of procedural rules, including Robert's Rules of Order";[29] and one particular hearing "was utter chaos and a complete violation of Louisiana's laws on open meetings."[30]

---

[23] *Id.*
[24] ECF No. 1 at ¶ 53.
[25] ECF No. 16-4 at 10.
[26] ECF No. 1 at ¶¶ 36–39.
[27] *Id.* at ¶ 39.
[28] *Id.* at ¶¶ 58–58 (quotation omitted).
[29] *Id.* at ¶ 60.
[30] *Id.*

As relevant to the ripeness questions raised in the City's Rule 12(b)(1) motion, the limited record before the Court reflects that Sucette revised its plans for the Sucette Harbor Project in response to concerns raised during the nine City Council hearings that spanned four months. For example, Sucette's original proposed ordinance featured 201 units of multi-family housing, an 84-room hotel, 11,700 square feet of retail and office space, a 110 boat-slip marina, and 589 parking spaces.[31] After "hearing several comments about scale, parking, density, height, [and] greenspace," however, Sucette proposed a revised plan that reduced the multi-family housing to 178 units.[32] But the City Council effectively rejected that revised plan when it amended the proposed Ordinance 23-16 to further reduce the number of permissible multi-family units to 90.[33] After that effective rejection, Woodward Harbor "redesigned the footprint of the active building" for the multi-family housing in response to "comments about [the] scale" of the building.[34] But that redesign did not assuage the City Council's concerns about the number of units of multi-family housing. Ultimately, at the final public hearing on the project, Woodward Harbor's representative explained that Woodward Harbor could "reduce the 201 [multi-family] units down to a minimum of 170, but we're not able to go below 170. It'd be disingenuous of us to put forth a site plan with a 90-unit apartment complex on it[.]"[35]

---

[31] ECF No. 16-4 at 32–33.
[32] *Id.* at 13.
[33] *Id.* at 18.
[34] *Id.* at 27.
[35] *Id.* at 41.

On September 5, 2023, the Mandeville City Council unanimously voted against Ordinance 23-16—"kill[ing]" the Sucette Harbor Project.[36] Section 4.3.2.13 of the CLURO barred Sucette from re-applying "for the same or substantially the same Special Use on the same or substantially the same site" for a year.[37] That one-year period expired over six months ago, but there is nothing in the record before the Court indicating that Sucette has formally re-applied for a conditional-use approval permit.

Sucette sued a month after the vote.[38] Its complaint asserts assorted claims against the City and Zuckerman under federal and Louisiana law.

***Count 1—Declaratory Relief.***[39] Sucette seeks a declaratory judgment (a) declaring its application for a conditional-use permit approved; (b) allowing it to "proceed forward with developing Sucette Harbor"; and (c) declaring that its development plans "are appropriate and allowable under Mandeville's laws[.]"[40]

***Count 2—Alternative Declaratory Relief.***[41] If the Court concludes that Sucette is not entitled to the declaratory relief requested in Count 1, Sucette alternatively asks the Court for a declaratory judgment that (a) the City violated Louisiana Open Meeting Laws; (b) "the review process" violated Sucette's procedural-due-process rights under the Fourteenth Amendment to the United States

---

[36] *Id.* at ¶ 72.
[37] ECF No. 16-3 at 2 (§ 4.3.2.13).
[38] *See generally* ECF No. 1.
[39] *Id.* at ¶¶ 92–98.
[40] *Id.* at ¶¶ 97–98.
[41] *Id.* at ¶¶ 99–100.

Constitution; (c) Zuckerman "improperly calculated density for the . . . project"; and (d) the CLURO "is unconstitutionally overbroad, vague, and ambiguous[.]"[42]

**_Count 3—Federal Regulatory-Takings Claim._**[43] Sucette asserts that the City and Zuckerman violated Sucette's rights under the Takings Clause of the Fifth Amendment to the United States Constitution, as incorporated by the Fourteenth Amendment, by "over-regulat[ing] the subject property" and thus "tak[ing] [the] property out of commerce."[44] In support, Sucette alleges that "no future developer could possibly satisfy the whims of [the City and Zuckerman] on property zoned Planned District," and that the City and Zuckerman "lack the institutional knowledge and control over the public in their forums to conduct hearings on land zoned Planned District."[45] Sucette further alleges that the City and Zuckerman denied its development plans for the project "based on Zuckerman's illegal density calculation," "inappropriate consideration" of a particular zoning district, "personal aesthetic considerations," "erroneous concerns over potential traffic," "inaccurate presumptions about the noise on the . . . property," "an incorrect interpretation of Robert's Rules of Order," and "unadvertised (and inaccurate) comments from the public."[46]

**_Count 4—Louisiana-Law Regulatory-Takings Claim._**[47] Sucette alleges that the "rejection" of its "development plan" amounts to a regulatory taking without just compensation that violates Sucette's rights under Sections 1 and 4 of Article I of

---

[42] *Id.* at ¶ 100.
[43] *Id.* at ¶¶ 101–110.
[44] *Id.* at ¶ 103.
[45] *Id.* at ¶ 104.
[46] *Id.* at ¶ 105.
[47] *Id.* at ¶¶ 111–115.

the Louisiana Constitution.[48] Without elaboration, Sucette simply concludes the rejection of the Sucette Harbor Project "has deprived the site of all economically beneficial use."[49] In similarly conclusion fashion, Sucette alleges that Zuckerman and the City "rejected the development . . . based on illegal motives and arguments"; that the Council's "basis for decision-making is not grounded on any legitimate or legally cognizable restrictions imposed by the reasonable exercise of the City's policy power"; and that the Council's rejection of the project "is a *de facto* taking[.]"[50]

***Count 5—Substantive-Due-Process Claim.***[51] Sucette alleges that Zuckerman and the City violated Sucette's right to substantive due process under the Fourteenth Amendment to the United States Constitution by "denying the Sucette Harbor development plan" in a way that "exceeds the scope of their decision-making capacity[.]"[52] Without elaboration or supporting facts, Sucette concludes that the "reasons for denying the Sucette Harbor development project were arbitrary and capricious";[53] that the rejection of the development plan "was outside [Zuckerman's and the City's] scope of authority under the CLURO and [Section 33:101 of the Louisiana Revised Statutes]";[54] that the rejection of the development plan "bears no relationship to any legitimate governmental purpose";[55] that Sucette's "practical

---

[48] *Id.* at ¶ 113.
[49] *Id.* at ¶ 144.
[50] *Id.*
[51] *Id.* at ¶¶ 116–123.
[52] *Id.* at ¶ 119.
[53] *Id.* at ¶ 120.
[54] *Id.* at ¶ 121.
[55] *Id.* at ¶ 122.

economic uses of the site have been eliminated";[56] and that Zuckerman and the City "have substantially interfered with [Sucette's] investment-backed expectations."[57]

**Count 6—Procedural-Due-Process Claim.**[58] Sucette alleges that Zuckerman and the City violated Sucette's procedural-due-process rights under the Fourteenth Amendment to the United States Constitution by denying Sucette "notice and a fair and impartial review of their proposed project."[59] Sucette complains that the City Council violated the Louisiana Open Meetings Law in unspecified ways and held "chaotic" and "disorganized" meetings on the project.[60] Sucette further alleges that Zuckerman and the City "had no intention of approving" a planned development on the property, and Sucette thus reasons that it was "denied a fair and unbiased forum within which to present [its] plan for the Sucette Harbor development[.]"[61]

**Count 7—Equal-Protection Claim.**[62] Sucette alleges that Zuckerman and the City violated Sucette's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by "purposely and intentionally treat[ing] [Sucette's] proposed marina completely differently than other marinas in the city limits."[63] In support, Sucette alleges that "marina owners on the east side of Mandeville have been allowed to leave sunken vessels in waterways and to not repair their properties."[64] According to Sucette, the City and Zuckerman

---

[56] *Id.*
[57] *Id.*
[58] *Id.* at ¶¶ 124–130.
[59] *Id.* at ¶127.
[60] *Id.* at ¶¶ 126–27.
[61] *Id.* at ¶ 129.
[62] *Id.* at ¶¶ 131–137.
[63] *Id.* at ¶ 133.
[64] *Id.*

"inserted onerous provisions surrounding the proposed marina that would prevent any financing of the project," including a "draconian penalty" for sunken vessels not timely removed that "does not exist for any other marina in Mandeville."[65]

***Count 8—Section 1983 Claim.***[66] Sucette alleges that the City and Zuckerman are liable under Section 1983.[67] In support, Sucette alleges that "Defendants constantly met with members of the public solely for developing strategies to impede, confuse, and incorrectly analyze CLURO provisions to prevent commercial development."[68] Among other complaints about Zuckerman's conduct while considering Ordinance 23-16, Sucette alleges that Zuckerman (a) "coordinated with a local architect . . . for purposes of incorrectly calculating density";[69] (b) "acted on his own personal opinions and his personal aesthetic preferences";[70] (c) "did not fairly and impartially review the site plans";[71] (d) "just tr[ied] to secure future votes" "nearly every time [he] spoke" at Council meetings;[72] (e) "conducted inappropriate public meetings";[73] (f) "highjacked meetings, grandstanded for [his] constituents, [and] rudely questioned and insulted the City Attorney and Planning Director";[74] and (g) "substituted his own personal agenda or narrative at the Council's meetings."[75]

---

[65] *Id.* at ¶ 134.
[66] *Id.* at ¶¶ 138–144.
[67] *Id.* at ¶ 140.
[68] *Id.* at ¶ 139.
[69] *Id.* at ¶ 140.
[70] *Id.*
[71] *Id.* at ¶ 141.
[72] *Id.*
[73] *Id.* at ¶ 142.
[74] *Id.* at ¶ 143.
[75] *Id.*

Based on these allegations and others, Sucette seeks the declaratory relief mentioned above, compensatory damages for the alleged taking and for the cost of Sucette's application efforts, and attorney's fees under 42 U.S.C. § 1988.[76]

Motions to dismiss followed.[77] For its part, the City moves to dismiss all of Sucette's constitutional claims for lack of subject-matter jurisdiction as unripe.[78] And the City separately moves to dismiss all claims against it, except Sucette's equal-protection claim (Count 7), for failure to state a claim.[79] Sucette opposes.[80]

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(1)

A party may move to dismiss a case for lack of subject-matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). The Court may assess subject-matter jurisdiction based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the [C]ourt's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction," so "the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* (citations omitted).

---

[76] *Id.* at 37–38 (prayer).
[77] ECF No. 15; ECF No. 16; ECF No. 17.
[78] ECF No. 16.
[79] ECF No. 17.
[80] ECF No. 28; ECF No. 35.

14

**B.    Rule 12(b)(6)**

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint that does not satisfy Rule 8(a)(2)'s pleading standard fails to state a claim upon which relief can be granted. *See generally* FED. R. CIV. P. 12(b)(6). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitations of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although '[courts] accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff, conclusory allegations unwarranted factual inferences, or legal conclusions are not accepted as true.'" *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quoting *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023)).

15

## III. ANALYSIS

Across two Rule 12(b) motions, the City moves the Court to dismiss all of the claims Sucette asserts against it. Because "[j]urisdiction is always first," *Carswell v. Camp*, 54 F.4th 307, 310 (5th Cir. 2022) (quotation omitted), the Court considers the City's Rule 12(b)(1) motion before turning to the City's Rule 12(b)(6) motion.

### A.    The City's Rule 12(b)(1) Motion

The City moves the Court under Rule 12(b)(1) to dismiss Sucette's takings claims and Sucette's factually intertwined equal-protection and due-process claims for lack of subject-matter jurisdiction.[81] The City says those claims are prudentially unripe because Sucette has not satisfied the "finality requirement" for them.[82] Because the Court concludes that Sucette has satisfied the "relatively modest" finality requirement at this Rule 12(b)(1) stage by showing that "there is no question about" the City's position on the Sucette Harbor Project, *Pakdel*, 594 U.S. at 478, the Court denies the City's motion to dismiss Sucette's claims as prudentially unripe.

"The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, . . . directs that private property shall not be taken for public use, without just compensation." *Urb. Devs., LLC v. City of Jackson*, 468 F.3d 281, 292 (5th Cir. 2006) (quotation and citation omitted). Before considering the merits of a takings claim, however, the Court "must be convinced that the claim in question is ripe[.]" *Id.* (citation omitted). "Ripeness is a question of law that implicates [the Court's] subject matter jurisdiction[.] *Id.* (citations omitted). Because

---

[81] ECF No. 16 at 1.
[82] ECF No. 16-1 at 5–12.

Sucette invokes the Court's subject-matter jurisdiction, Sucette has the burden to prove that its claims meet ripeness requirements. *See generally TOTAL Gas & Power N. Am., Inc. v. FERC*, 859 F.3d 325, 332 (5th Cir. 2017), *as revised* (July 10, 2017).

"Ripeness ensures that federal courts do not decide disputes that are 'premature or speculative.'" *DM Arbor Ct., Ltd. v. City of Houston*, 988 F.3d 215, 218 (5th Cir. 2021) (quoting *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002)). "A case becomes ripe when it 'would not benefit from any further factual development and when the court would be in no better position to adjudicate the issues in the future than it is now.'" *Id.* (quoting *Pearson v. Holder*, 624 F.3d 682, 684 (5th Cir. 2010)).

Ripeness comes in two forms: constitutional and prudential. "Constitutional ripeness refers to Article III's case-or-controversy requirement, which mandates that an 'actual controversy' exist between the parties 'at all stages of review' in federal court." *Id.* at 218 n.1 (quoting *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016)). Prudential ripeness refers to a federal court's decision not to hear a case that is constitutionally ripe "for prudential reasons, such as problems of prematurity and abstractness." *Id.* (quotation and citation omitted). The "finality requirement" implicates prudential—not constitutional—ripeness. *See id.* at 220 (citations omitted). "[B]ecause the final decisionmaker requirement for takings claims is motivated by prudential concerns about the fitness of the issue for judicial review," the Court "can rest easier in applying" that requirement here. *Id.* (citation omitted).

"When a plaintiff alleges a regulatory taking in violation of the Fifth Amendment," as Sucette does here, "a federal court should not consider the claim before the government has reached a 'final' decision." *Pakdel*, 594 U.S. at 475 (citing *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 737 (1997)). That means "[a] regulatory takings claim is not ripe until the government has reached a final decision on the challenged regulation." *DM Arbor Ct., Ltd.*, 988 F.3d at 218 (citing *Williamson Cnty. Reg'l Plan Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), *overruled on other grounds by Knick v. Township of Scott*, 588 U.S. 180 (2019)).[83]

The finality requirement's rationale is simple: "Only after the final regulatory decision will a court have before it the facts necessary to evaluate a regulatory takings claim, such as 'the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations.'" *Id.* (quoting *Williamson Cnty.*, 473 U.S. at 191). If "similar 'factual development is necessary' for related claims"—like Sucette's due-process and equal-protection claims—"then those claims are also not ripe until the regulator has made a final decision." *Id.* at 218–19 (quoting *John Corp. v. City of Hous.*, 214 F.3d 573, 586 (5th Cir. 2000)).

This finality requirement is "relatively modest," and "nothing more than *de facto* finality is necessary." *Pakdel*, 594 U.S. at 478, 479. But a plaintiff still "must show . . . that there is no question about how the regulations at issue apply to the particular land in question." *Id.* at 478 (quotation and citation omitted). To do so, "a

---

[83] "*Knick* overruled *Williamson County's* requirement that a property owner first litigate a takings claim in state court." *DM Arbor Ct., Ltd.*, 988 F.3d at 218 n.2 (citing *Knick*, 588 U.S. at 184–85). But *Knick* "did not alter the requirement for a final decision from the regulator before any litigation is commenced." *Id.* (citing *Knick*, 588 U.S. at 187–88).

developer must at least resort to the procedure for obtaining variances and obtain a conclusive determination by the [regulator] whether it would allow the proposed development in order to ripen its takings claim." *Suitum*, 520 U.S. at 737 (quotation, citation, and alterations omitted). The "finality requirement" is not met "if avenues still remain for the government to clarify or change its decision," *Pakdel*, 594 U.S. at 480 (citations omitted), or if the plaintiff "has ignored or abandoned some relevant form of review or relief," *Urb. Devs. LLC*, 468 F.3d at 293 (citing *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1041 (5th Cir. 1998)). So, "even if a plan is initially disapproved by the government, property owners must then seek variances or waivers, when potentially applicable, before a court will hear their takings claims." *Id.* (first citing *Williamson Cnty.*, 473 U.S. at 187; and then citing *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 297 (1981)). Importantly, however, the finality requirement does not require landowners or developers to "submit applications for their own sake." *Palazzolo v. Rhode Island*, 533 U.S. 606, 622 (2001).

On the limited record and briefing before it,[84] the Court concludes that Sucette has met the "relatively modest" finality requirement for its claims arising from the rejection of the Sucette Harbor Project because the City "has reached a conclusive position" on the project. *Pakdel*, 594 U.S. at 479, 480. The City Council's unanimous rejection of Ordinance 23-16 is the City's final decision on the Sucette Harbor Project:

---

[84] Nothing in this order and reasons should be construed to foreclose the City from moving for summary judgment, or for judgment on the pleadings, on prudential-ripeness grounds if facts or authority not yet presented to the Court reveal that the finality requirement is not, in fact, met. *See, e.g.*, *DM Arbor Ct., Ltd.*, 988 F.3d at 219 (underscoring that "[r]ipeness should be decided . . . on the basis of all the information available to the court" (quotation and citation omitted)).

It leaves "no question about how" the City will apply the CLURO to that specific project. *Id.* at 478 (quotation omitted). No party identifies any mechanism for further review of the City Council's unanimous rejection of the Sucette Harbor Project. The City Council's vote on the Sucette Harbor Project is thus "a conclusive determination" that the City will not "allow the proposed development." *Suitum*, 520 U.S. at 737 (quotation, citation, and alterations omitted). Accordingly, by unanimously rejecting Ordinance 23-16 after four months of consideration and nine hearings, the City Council "committed to a position" on that project, causing "potential ambiguities" about the City's regulation of that project to "evaporate," and making "the dispute" stemming from that project "ripe for judicial resolution." *Pakdel*, 594 U.S. at 479.

The limited record before the Court does not reflect that Sucette failed to "seek variances or waivers" that were "potentially applicable" to the Sucette Harbor Project. *Urb. Devs. LLC*, 468 F.3d at 293. On the contrary, this record reflects that Sucette sought "departures"—the functional equivalent of variances under the CLURO[85]— through its proposed Ordinance 23-16 and the accompanying site plans.[86] The City necessarily denied those departures when the Council disapproved Ordinance 23-16.

The City nonetheless contends that Sucette has not met the "relatively modest" finality requirement.[87] *Pakdel*, 594 U.S. at 478. The Court is not persuaded.

---

[85] *See* ECF No. 16-3 at 13 (§ 7.5.15.1) ("Planned District applications shall contain a statement by the developer as to how the submitted plan departs from the existing requirements of this Land Use Regulations Ordinance and any other regulations applicable to the proposed use or uses for the district in which the proposed use could be established of right and how each departure improves what otherwise would be required under these regulations.").

[86] *See* ECF No. 16-4 at 33 (reciting that "all variances and departures from the CLURO are granted for the subject project consistent with the attached site plans for Sucette Harbor").

[87] ECF No. 16-1 at 5–15.

The City chiefly contends that Sucette has not satisfied the finality requirement because Sucette did not submit an alternative plan to the one the Council rejected.[88] The Court is not convinced for at least two reasons—one legal, one factual. Factually, this limited record reflects that Sucette submitted alternative plans for the Sucette Harbor Project, at least informally, when Sucette revised its plans in response to concerns raised during the nine City Council hearings spanning four months.[89] And legally, the Court is not convinced that Sucette had to formally re-apply for a conditional-use permit for this project or another one before its regulatory-takings claims for this specific project would ripen.[90] Neither of the City's principal cases supports so stringent a view of the finality requirement.[91] *Cf. Pakdel*, 594 U.S. at 478 (underscoring that "[t]he finality requirement is relatively modest").

The first of the City's cases—*Penn Central*—does not mention ripeness and does not support imposing a formal re-application requirement on Sucette here. *Penn Central* instead held, on the merits, that a New York City law did not effect a regulatory taking. 438 U.S. at 136–38. In making that merits holding, the Supreme Court reasoned that no regulatory taking occurred because, although New York City

---

[88] *Id*. at 5–12.

[89] *See, e.g.*, ECF No. 16-4 at 13 (Sucette proposing a revised plan reducing multi-family housing in response to "several comments about scale, parking, density, height, [and] greenspace"); *id*. at 27 (Sucette proposing a multi-family building with a "redesigned . . . footprint" in response to "comments about [the] scale" of the building).

[90] Along similar lines, the City offers no clear limiting principle to support its stringent view of the finality requirement's application to the Sucette Harbor Project. On the City's theory, an owner or developer of Mandeville property zoned Planned District would never have a prudentially ripe regulatory-takings claim arising from the rejection of a development plan because the owner or developer could always submit a different development plan for the Council's consideration.

[91] *Id*. at 5 (first citing *Penn Cent. Transp. Co. v. N.Y.C.*, 438 U.S. 104 (1978); and then citing *Beach v. City of Galveston*, No. 21-40321, 2022 WL 996432 (5th Cir. Apr. 4, 2022)(per curiam)).

had disapproved one plan, the property owners had not sought approval for an alternative plan. *Id.* The Court "emphasize[d]" that its holding rested on the property owner's "ability to use the [property] for its intended purposes and in a gainful fashion." *Id.* at 138 n.36. The City has not convinced the Court that *Penn Central*'s merits analysis controls the prudential-ripeness analysis of the "relatively modest" finality requirement where, as here, the regulator has formally disapproved a plan for the property and functionally denied requests for variances after the developer has revised that plan, at least in part, in response to concerns the regulator expressed across months of negotiations. *Pakdel*, 594 U.S. at 478. The Court does not read *Penn Central* to compel a conclusion that Sucette's claims are prudentially unripe.[92]

The City's second case—*Beach*—is instructive of the finality requirement, but the Court does not read *Beach* to require Sucette to have formally re-applied for a conditional-use permit before its regulatory-takings claims would prudentially ripen. *See* 2022 WL 996432, at *1–3. *Beach* arose from regulatory-takings claims that a property owner brought against a city after the city council denied the property owner's request for a specific-use permit for his property to operate as a multifamily dwelling. *Id.* at *1. Zoning standards for the property barred multifamily dwellings, but the property enjoyed "grandfather" status as a multifamily dwelling. *Id.* After the property sat vacant for nearly 14 months, the city told the property owner that the property had lost its grandfather status and that he would have to get a specific-

---

[92] To the extent the City contends that the "relatively modest," *Pakdel*, 594 U.S. at 478, finality requirement is not met because the City Council's denial of the Sucette Harbor Project is not a denial of all use of the property, ECF No. 16-1 at 10, the argument conflates the merits with the requirements for prudential ripeness. *Cf. Pakdel*, 594 U.S. at 481 (distinguishing the ripeness and merits inquiries).

use permit if he wanted to use the property as a multifamily dwelling. *Id.* The property owner did not appeal the revocation of grandfather status. *Id.* Eventually, the property owner applied for a specific-use permit—which the city council denied. *Id.* But "multiple" members of the city council "encouraged" the property owner to reapply for a specific-use permit after he had made "necessary repairs" to the property, "and the mayor confirmed that nothing would prevent [the property owner] from reapplying." *Id.* The property owner did not reapply; he simply sued. *Id.* The district court dismissed the property owner's claims under Rule 12(b)(1) as unripe. *Id.* at *2.

The Fifth Circuit affirmed. *Id.* at *3. The panel reasoned that the property owner failed to satisfy the finality requirement because at least two "avenues still remain[ed]" for the city "to clarify or change its decision." *Id.* at *2–3 (citation and quotation omitted). First, the property owner could have appealed the city's decision to remove the property's grandfather status, but he did not do so. *Id.* at *3. Second, "nothing prevented" the property owner "from reapplying" for a specific-use permit "after the city council denied his first application, yet he failed to reapply." *Id.* Thus, because the property owner "ignored relevant forms of relief," the panel held that he "failed to satisfy the finality requirement" and so his takings claims were unripe. *Id.*[93]

---

[93] *Beach*'s application of the finality requirement is seemingly in tension with a more recent, also unpublished, opinion. *See Money v. City of San Marcos*, No. 24-50187, 2025 WL 429980, at *3 (5th Cir. Feb. 7, 2025) (per curiam) (reversing district court's dismissal of takings claim as prudentially unripe; holding that the claim was prudentially ripe even though the property owners did not avail themselves of state appellate procedures available to them and faulting the district court for seemingly conflating the still-valid finality requirement with the now-invalid state-exhaustion requirement).

Applied here, *Beach* does not compel the Court to conclude that Sucette fails to satisfy the "relatively modest" finality requirement. *Pakdel*, 594 U.S. at 478. The City does not identify any "avenues" that "remain[ ] available" for the City Council "to clarify or change its decision" to reject *the Sucette Harbor Project. Id.* at *2 (citation and quotation omitted). Under the CLURO, the City Council's disapproval of the ordinance that would have implemented the Sucette Harbor Project is the City Council's final decision on that project—the City identifies no further steps in the Planned District conditional-use-approval process that Sucette could have undertaken to review the City Council's denial of that project. That the CLURO barred Sucette from re-applying for conditional-use approval of the Sucette Harbor Project (or any substantially similar project) for a year underscores the finality of the City Council's decision on *this project*.[94] Sucette was not required to wait a year and to re-submit a formal application "for [its] own sake." *Palazzolo*, 533 U.S. at 622.

Contending otherwise, the City submits that Sucette has not met the finality requirement because Sucette did not administratively appeal the determination that the site of the Sucette Harbor Project needed to be rezoned.[95] The City's argument rests on a provision of the CLURO that allows "[a]ny person aggrieved by a decision of any of the officers, departments, or City staff that administer the provisions of the" CLURO to "appeal to the Zoning Commission within thirty . . . days after the decision

---

[94] ECF No. 16-3 at 2 (§ 4.3.2.13).
[95] ECF No. 16-1 at 14–15.

has been rendered."[96] The Court assumes[97] that the determination that a rezoning was required could have been appealed under that provision of the CLURO. Even on that assumption, however, the Court is not convinced that Sucette's failure to take such an appeal defeats finality: The limited record before the Court does not indicate that such an appeal is an "avenue[ ] [that] still remain[s] for [the City] to clarify or change its decision" on the Sucette Harbor Project. *Pakdel*, 594 U.S. at 480 (citations omitted). That is because this limited record does *not* reflect that the City Council's unanimous rejection of Ordinance 23-16 was based solely on a perceived need to rezone the site, and the Court does not read Sucette's complaint to assert a standalone takings claim based on the City's determination that rezoning was required.

\*    \*    \*

In sum, the Court holds that Sucette has satisfied the "relatively modest" finality requirement for its constitutional claims at this Rule 12(b)(1) stage because Sucette has shown that "there is no question about" the City's position on the Sucette Harbor Project.[98] *Id.* Sucette's constitutional claims are prudentially ripe. So the Court denies the City's Rule 12(b)(1) motion and turns to its Rule 12(b)(6) motion.

---

[96] ECF No. 16-3 at 8 (§ 4.3.4.1(1)).

[97] For its part, Sucette contends that it could not have appealed the determination that the Sucette Harbor Project site needed to be rezoned under Section 4.3.4.1(1) of the CLURO. *See* ECF No. 35 at 25–26. The Court need not decide whether Section 4.3.4.1(1) allowed an appeal of that determination because, as explained above, the Court finds that such an appeal is not an "avenue[ ]" that "remain[s] available" for the City Council "to clarify or change its decision" to reject the Sucette Harbor Project, specifically. *Beach*, 2022 WL 996432, at at *2 (citation and quotation omitted).

[98] The City contends that Sucette's due-process and equal-protection claims are unripe for the same reasons that Sucette's regulatory-takings claims are unripe. *See* ECF No. 16-1 at 12. Because the Court holds that Sucette's regulatory-takings claims are prudentially ripe on the record and briefing now before it, and because it is undisputed that the same prudential-ripeness analysis applies to Sucette's due-process and equal-protection claims, the Court holds that Sucette's due-process and equal-protection claims are also prudentially ripe for purposes of the City's Rule 12(b)(1) motion.

**B.      The City's Rule 12(b)(6) Motion**

Next, the City moves to dismiss all but Sucette's equal-protection claim for failure to state a claim. The Court considers each challenged claim in turn.

**1.      State Regulatory Taking (Count 4)**

The City contends that Sucette fails to state a Louisiana-law regulatory-takings claim against it. The Court agrees. Because Sucette lacks a recognized species of property right under the Louisiana Constitution in the City Council's approval of its particular plan for development of the Sucette Harbor Project site, Sucette fails to state a regulatory-takings claim against the City under the Louisiana Constitution.

Sucette's Louisiana-law regulatory-takings claim stems from Article I, Section 4 of the Louisiana Constitution. Two provisions of it are relevant. First, under Article I, Section 4(A), "[e]very person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property." LA. CONST. ANN. art. I, § 4(A). Second, under Article I, Section 4(B)(1), "[p]roperty shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit." LA. CONST. ANN. art. I, § 4(B)(1).

Interpreting those provisions, the Supreme Court of Louisiana has said that a property owner may bring an inverse-condemnation action "seeking compensation for land already taken or damaged against a governmental or private entity having the powers of eminent domain where no expropriation has commenced." *Faulk v. Union Pac. R.R. Co.*, 2014-1598, p. 9 (La. 6/30/15); 172 So. 3d 1034, 1043–44 (citations omitted). "To establish inverse condemnation" under Article I, Section 4 of the

26

Louisiana Constitution, "a party must show (1) a recognized species of property right has been affected, (2) the property has been taken or damaged in a constitutional sense, and (3) the taking or damaging was for a public purpose." *Saloom v. Dep't of Transp. & Dev.*, 2022-596, p. 5 (La. 12/9/22); 354 So. 3d 1179, 1182 (citation omitted).

Sucette fails to plead facts sufficient to satisfy the first element—that "a recognized species of property right has been affected[.]" *Id.* (citation omitted). An owner or developer of property has no "recognized species of property right" under Article I, Section 4 of the Louisiana Constitution in the development of property if development of that property is "entirely contingent" on a governing body's approval "in accordance with" the governing body's "regulatory scheme." *Pointe Prospect, LLC v. W. Feliciana Gov't*, 2022-1503, p. 9 (La. App. 1 Cir. 5/23/23); 368 So. 3d 1117, 1122–23. That is the case here. Sucette alleges that the property is "zoned PD," [99] and that "the CLURO prohibits the owner of property in a PD district from doing anything with its property without City Council approval."[100] Because Sucette alleges that the CLURO prohibits it "from doing anything with its property without City Council approval,"[101] Sucette's development of the Sucette Harbor Project was "entirely contingent" on approval by the City Council "in accordance with" the CLURO. *Id.* So Sucette lacks the "recognized species of property right" required to support its regulatory-taking claim under Article I, Section 4 of the Louisiana Constitution.[102]

---

[99] ECF No. 1 at ¶¶ 36–37.

[100] *Id.* at ¶ 33; *see also id.* at ¶ 32 ("[A]ny use of property in a PD is prohibited unless and until it is approved by the City Council.").

[101] *Id.* at ¶ 33.

[102] *Accord*, *e.g.*, *Pointe Prospect, LLC*, 368 So. 3d at 1222–23 (holding that a developer had no recognized property right in developing a subdivision because development of the subdivision was

For its part, Sucette does not even address the argument that its Louisiana regulatory-takings claim fails for lack of a "recognized species of property right."[103] So Sucette has forfeited any argument opposing dismissal of the claim on that ground. *See, e.g.*, *Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 574 (5th Cir. 2021) (holding that a party forfeited an argument on an issue by failing to adequately brief it).

Accordingly, the Court grants the City's motion to dismiss Sucette's regulatory-takings claim (Count 4) under Article I, Section 4 of the Louisiana Constitution.

### 2.    Federal Regulatory Taking (Count Three)

The City next contends that Sucette fails to state any federal regulatory-takings claims against it. Because Sucette fails to plead facts—rather than mere conclusions—plausibly establishing that the City Council's failure to approve the Sucette Harbor Project permanently deprived the property of all economically beneficial use, Sucette fails to state a categorical regulatory-takings claim against the City under *Lucas v. South Carolina Costal Council*, 505 U.S. 1003 (1992). And because Sucette fails to plead facts plausibly establishing that any *Penn Central* factor favors it, Sucette also fails to state a *Penn Central* regulatory-taking claim.

---

subject to regulation by the parish government and "entirely contingent" on the parish's approval); *Belle Co., LLC v. State ex. rel. Dep't of Env't Quality*, 2008-2382, p. 16 (La. App. 1 Cir. 6/12/09); 25 So. 3d 847, 856–57 (holding that property owner had no recognized property right in obtaining a permit to operate a landfill on its property because it "voluntarily sought to enter into an arena subject to pervasive government control," and its ability to operate a landfill "was at all times entirely subject to the [government body's] regulatory power"), *writ denied*, 2009-1684 (La. 10/9/09); 18 So. 3d 1291).

[103] ECF No. 28 at 12–15.

28

"The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, guarantees that private property shall not 'be taken for public use, without just compensation.'" *Golden Glow Tanning Salon, Inc., v. City of Columbus*, 52 F.4th 974, 980 (5th Cir. 2022) (quoting U.S. CONST. amend. V). Two types of regulatory takings are relevant here: a categorical taking under *Lucas* and a taking based on use restrictions under *Penn Central*. The Court takes each in turn.

A *Lucas* categorical taking occurs only "in the 'rare situation[ ]' 'where a regulation denies all economically beneficial or productive use of land.'" *Id.* (quoting *Lucas*, 505 U.S. at, 1015, 1016–17). To qualify as a categorical taking, the deprivation of all economically beneficial or productive use must be permanent. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan Agency*, 535 U.S. 302, 303 (2002) ("*Lucas* was carved out for the extraordinary case in which a regulation *permanently* deprives property of all use[.]" (emphasis added) (quotation omitted)). *Lucas* is "inapposite" if a landowner is "prevented from using their property for only *some* productive purposes." *Golden Glow*, 52 F.4th at 981 (citing *Lucas*, 505 U.S. at 1015–19). A "deprivation of *some* economically productive uses" is not a categorical taking under *Lucas* unless the "entire property" is rendered "valueless." *Id.* (quotation omitted).

Sucette fails to plead facts plausibly establishing that the denial of the Sucette Harbor Project is a categorical regulatory taking under *Lucas*. That is because Sucette fails to plead facts—rather than mere conclusions—plausibly establishing that the City Council's rejection of that one project deprives the property

of *all* economically beneficial or productive use.[104] True, Sucette recites that "Defendants' rejection of the Sucette Harbor development has deprived the site of all economically beneficial use[.]"[105] But that "bare assertion" is "nothing more than a formulaic recitation of the elements" of a *Lucas* categorical regulatory-taking claim. *Iqbal*, 556 U.S. at 681 (quotation omitted). It is a conclusory allegation "not entitled to be assumed true." *Id.* (citation omitted). Stripped of that conclusory allegation, Sucette's complaint lacks well-pleaded allegations allowing a plausible inference that the denial of the Sucette Harbor Project is "the 'rare situation[ ]' 'where a regulation denies all economically beneficial or productive use of land.'" *Golden Glow*, 52 F.4th at 980 (quoting *Lucas*, 505 U.S. at, 1015, 1016–17).[106] At most, the complaint's well-pleaded factual allegations allow an inference that Sucette was deprived of *one* potential "economically productive use[ ]" of the property—use of the property for the "active adult community" the Sucette Harbor Project contemplated. *Golden Glow*, 52 F.4th at 981 (quotation omitted). But no well-pleaded factual allegations support a reasonable inference that the denial of the Sucette Harbor Project "render[s] the entire property valueless." *Golden Glow*, 52 F.4th at 981 (quotation omitted). In fact, the complaint lacks any well-pleaded factual allegations plausibly establishing that the value of the property has diminished—at all—as a result of the City Council's

---

[104] For example, Sucette does not plead facts plausibly establishing that the Sucette Harbor Project, and the "active adult community" it contemplated, represents the only economically beneficial use of the property. Nor does Sucette plead facts plausibly establishing that the City Council would deny Sucette conditional-use approval for any and all economically beneficial uses of the property.

[105] ECF No. 1 at ¶ 114.

[106] *Accord, e.g.*, *Maloney Gaming Mgmt., L.L.C. v. St. Tammany Par.*, 456 F. App'x 336, 344 (5th Cir. 2011) (affirming Rule 12(b)(6) dismissal of categorical regulatory-taking claim because property owner inadequately alleged "a complete deprivation of the economically viable use of its property" (citations and quotation omitted)).

rejection of this one development plan. *Cf. Lucas*, 505 U.S. at 1019 n.8 (acknowledging that even a landowner whose property is diminished in value 95% may not recover under a categorical-taking theory). Sucette's *Lucas* categorical-taking claim fails.

For its part, Sucette does not meaningfully rebut the City's argument that Sucette fails to plead facts sufficient to plausibly establish a categorical regulatory taking under *Lucas*.[107] In fact, Sucette does not even cite *Lucas*. Nor does Sucette point to any allegations in its complaint that would allow the Court to reasonably infer that the City Council's rejection of one planned development for the property is equivalent to a permanent denial of all economically beneficial use of the property.[108]

A regulation that restricts use of the property, but "fall[s] short of eliminating all economically beneficial use" of the property, "may" nonetheless qualify as a regulatory taking under *Penn Central*. *Palazzolo*, 533 U.S. at 617 (citing *Penn Central*, 124). To decide if a regulatory taking has occurred under *Penn Central*, the Court considers "a complex of factors, including (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; (3) the character of the governmental action." *Murr v. Wisconsin*, 582 U.S. 383, 393 (2017) (quotation omitted). The first and second factors are the "[p]rimary" ones. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005). The Fifth Circuit has affirmed the Rule 12(b)(6) dismissal of *Penn Central* claims when all factors disfavor the plaintiff. *See, e.g.*, *Degan v. Bd. of Trs. of Dall. Police & Fire Pension Sys.*, 956 F.3d 813, 815 (5th Cir. 2020). Just so here.

---

[107] ECF No. 28 at 10–12.
[108] *Id.*

Viewing only the well-pleaded factual allegations of the complaint, on the briefing presented, the Court holds that all *Penn Central* factors disfavor Sucette.

The first *Penn Central* factor—economic impact of the regulation on the claimant—disfavors Sucette. To determine the economic impact of a regulation, the Court "compare[s] the value that has been taken from the property with the value that remains in the property." *Hackbelt 27 Partners, L.P. v. City of Coppell*, 661 F. App'x 843, 850 (5th Cir. 2016) (per curiam) (quotation omitted).[109] "When analyzing the economic impact of a regulation, the loss of anticipated gains or potential future profits is typically not considered." *Id.* (quotation omitted). Put another way, "[i]t is not proper to measure economic impact based on a hypothetical economic result that assumes a state of affairs that did not exist." *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 632 (9th Cir. 2020) (quotation omitted). Instead, the Court properly considers only the diminution in value that resulted from the government action—here, the refusal to approve the plan for the Sucette Harbor Project. *See id*

Sucette fails to plead facts plausibly establishing that the denial of the development plan for the Sucette Harbor Project diminished the property's value to the extent necessary to flip this *Penn Central* factor in its favor. Viewing only the complaint's well-pleaded factual allegations, the Court cannot reasonably infer a

---

[109] To be sure, *Hackbelt* applied the "*Penn Central* inquiry" to decide if a regulatory taking had occurred under the Texas Constitution. 661 F. App'x at 850 (quotation omitted). But no party argues that the *Penn Central* economic-impact inquiry *Hackbelt* conducted differs in any material respect from the *Penn Central* economic-impact inquiry conducted under the United States Constitution. In all events, the Texas case on which *Hackbelt* principally relies for its *Penn Central* economic-impact analysis—*Mayhew v. Town of Sunnyvale*—itself relies on Supreme Court precedent for the relevant portion of its analysis. 964 S.W.2d 922, 936 (Tex. 1998) (citing *Andrus v. Allard*, 444 U.S. 51, 66 (1979)).

diminution in the property's value from (a) when the property was acquired to (b) when the City Council unanimously rejected the Sucette Harbor Project. After all, according to the complaint, allowable uses of the property have not changed: Before the City Council vote, there were no permitted uses of it without Council approval; after that vote, there remain no permitted uses of it without Council approval. It is no answer to say that the value of the property has diminished because of restrictions for development on property zoned Planned District. As noted, the allegations of the complaint suggest those restrictions were in place when Sucette acquired the property; as a result, any alleged diminution in the property's value because of those restrictions cannot constitute a diminution in value resulting from the City Council's unanimous rejection of Sucette's development plan for the Sucette Harbor Project.

To be sure, the complaint includes some allegations speculating about the economic impact the Sucette Harbor Project would have had on the City and other third parties if the City Council had approved the project.[110] But those allegations about third-party economic impact do not help Sucette establish a *Penn Central* taking for at least two reasons. First, the focus of this *Penn Central* factor is "the economic impact of the regulation on the claimant," Sucette—not on third parties. *Lingle*, 544 U.S. at 538. Sucette's allegations about the hypothetical economic impact the project's approval would have had on third parties does not plausibly establish that denial of the project diminished the value of the property itself or otherwise economically impacted Sucette. In any event, Sucette's allegations assume approval

---

[110] *See, e.g.*, ECF No. 1 at ¶ 74 (alleging that the Sucette Harbor project would have created jobs, provided tax revenue, and generated money for cancer research).

of the project and thus improperly attempt to "measure economic impact based on a hypothetical economic result that assumes a state of affairs that did not exist." *Bridge Aina Le'a*, 950 F.3d at 632 (quotation omitted); *accord, e.g.*, *Hackbelt 27*, 661 F. App'x at 850 (declining to consider alleged loss of anticipated gains from a non-guaranteed potential future use in evaluating *Penn Central*'s economic-impact factor).

The second *Penn Central* factor, interference with reasonable, investment-backed expectations, strongly disfavors Sucette. "A 'reasonable[,] investment-backed expectation' must be more than a 'unilateral expectation or an abstract need.'" *Ruckelhaus v. Monsanto Co.*, 467 U.S. 986, 1005–06 (1984) (quoting *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161 (1980)). "The reasonable, investment-backed expectation analysis is designed to account for property owners' expectation that the regulatory regime in existence at the time of their acquisition will remain in place, and that new, more restrictive legislation or regulations will not be adopted." *Love Terminal Partners, L.P. v. United Stat*es, 889 F.3d 1331, 1345 (Fed. Cir. 2018).

This factor aims "to limit recoveries to property owners who can demonstrate that they bought their property in reliance on a state of affairs that did not include the challenged regulatory regime." *Id.* (quotation omitted). "[W]hat is 'relevant and important in judging reasonable expectations' is 'the regulatory environment at the time of the acquisition of the property.'" *Id.* (quoting *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1350 n.22 (Fed. Cir. 2001) (en banc)).

Sucette fails to plead facts plausibly establishing that Sucette had reasonable, investment-backed expectations in the approval of the Sucette Harbor Project,

34

specifically. Sucette has not pleaded facts supporting a reasonable inference that the "regulatory environment" in place when the site of the Sucette Harbor Project was acquired differs in any relevant respect from the "regulatory environment" in place when the City Council rejected Sucette's development plan for the Sucette Harbor Project. *Id.* (quotation omitted). According to the complaint, the site of the Sucette Harbor Project has been zoned Planned District for over 30 years—suggesting that the owner of the site would long have had to obtain City Council approval before "doing anything" with it.[111] The complaint's well-pleaded allegations do not support a reasonable inference that City Council pre-approval of planned development on property zoned Planned District is a new regulatory requirement or one postdating acquisition of the Sucette Harbor Project site.[112] If anything, the complaint's allegations support the opposite conclusion—that the property was acquired with knowledge that any planned development on it would require City Council approval and thus that, absent some change in the regulatory regime, no particular planned development on the property could ever be guaranteed. Given the pre-existing requirement of City Council approval for any planned development on the property, Sucette could not reasonably expect that it would be able to develop the property in any particular manner it wished. Ultimately, the Court "cannot find reasonably held

---

[111] *Id.* at ¶ 33; *see also id.* at ¶ 36.

[112] The complaint's well-pleaded factual allegations do not plausibly establish that the City's allegedly incorrect classification of the property as being zoned PRD (rather than PD) post-dates Sucette's acquisition of the property. But even if they did,  the regulatory environment would have been the same for all purposes relevant here: City Council approval still would have been required for any planned development on the property, and use of the property for the Sucette Harbor Project would still be "nothing more than" a non-guaranteed potential future use. *Hackbelt* 27, 661 F. App'x at 850.

investment-backed expectations were affected by the City enforcing restrictions in place when such investments were made." *DaVinci Inv., Ltd. P'ship v. City of Arlington*, 747 F. App'x 223, 229 (5th Cir. 2018) (per curiam).

Like the first two *Penn Central* factors, the third one—the character of the governmental action—disfavors Sucette. "In considering the third [*Penn Central*] factor, . . . regulatory takings doctrine seeks to identify regulatory actions that are functionally equivalent to the classic taking in which the government directly appropriates private property or ousts the owner from his domain." *Clayland Farm Enters., LLC v. Talbot Cnty.*, 987 F.3d 346, 355 (4th Cir. 2021) (quotation and alterations omitted). Sucette fails to plead facts supporting a reasonable inference that the City Council's rejection of the Sucette Harbor Project is "functionally equivalent" to a classic taking. *Id.* (quotation omitted). Sucette's "is not a traditional takings claim; there is no invasion of real estate or appropriation of physical property." *Degan*, 956 F.3d at 816 (citation and quotation omitted). "Interference with property is less likely to be considered a taking when it arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Clayland Farm Enters.*, 987 F.3d at 355 (quotation omitted). "Regulations that control development based on density and other traditional zoning concerns," like the CLURO regulations the City Council applied to unanimously deny approval of the Sucette Harbor Project, "are the paradigm of this type of public program." *Id.* (quotation omitted); *see also, e.g.*, *Yur-Mar, L.L.C. v. Jefferson Par. Council*, 451 F. App'x 397, 400 (5th Cir. 2011) (per curiam) ("'Land-use restrictions or controls to

enhance the quality of life by preserving the character and desirable aesthetic features of a city' are not generally takings." (quoting *Penn Cent.*, 438 U.S. at 129)).

Against all of this, Sucette offers only a limited, two-paragraph counterargument that does not convince the Court that any *Penn Central* factor tilts in Sucette's favor.[113] To start, Sucette asserts in its opposition brief that it has "lost millions of dollars in applying for a conditional use permit with the City."[114] In support of that assertion, Sucette cites paragraphs 74 and 109 of its complaint.[115] But neither of those paragraphs supports Sucette's assertion. Paragraph 74 includes allegations speculating about the hypothetical economic impact that approval of the Sucette Harbor Project would have had on third parties; it does not state, as Sucette represents, that Sucette has "lost millions of dollars[.]"[116] Paragraph 109 says that "denial of the Sucette Harbor development plan has had a significant economic impact on [Sucette] and has extensively interfered with [Sucette's] distinct investment-backed expectations with respect to the subject property[.]"[117] But that "bare assertion" is "nothing more than a formulaic recitation of the elements" of a *Penn Central* regulatory-taking claim. *Iqbal*, 556 U.S. at 681 (quotation omitted). It is a conclusory allegation "not entitled to be assumed true." *Id.* (citation omitted).

Sucette next asserts that "[t]he Council's decision on Sucette Harbor has directly and negatively impacted reasonable investment-backed expectations," citing

---

[113] ECF No. 28 at 12.
[114] *Id.*
[115] *Id.* at n.50.
[116] ECF No. 1 at ¶ 74.
[117] *Id.* at ¶ 109.

paragraph 122 of its complaint.[118] But paragraph 122 does not feature facts plausibly establishing that the rejection of the Sucette Harbor Project interfered with Sucette's reasonable, investment-backed expectations. That paragraph states in relevant part that "Defendants have substantially interfered with [Sucette's] investment-backed expectations."[119] Like the allegations in paragraph 109, this conclusory allegation cannot be assumed true because it is "nothing more than a formulaic recitation of" the reasonable-investment-backed-expectations element. *Id.* (quotation omitted).

Sucette also asserts that "the subject land is out of commerce as Council approval is needed to do *anything* in a PD district."[120] But it is unclear how Sucette believes this assertion helps it state a *Penn Central* regulatory-takings claim, because Sucette does not tie the assertion to any particular *Penn Central* factor. In all events, as noted above, the well-pleaded factual allegations of Sucette's complaint do not support a reasonable inference that the land occupies any different economic position than it did before the City Council rejected the Sucette Harbor Project. If the "subject land is out of commerce" now, as Sucette puts it, the land was also "out of commerce" before the City Council rejected the Sucette Harbor Project.[121] Then, as now, "Council approval [was] needed to do anything in [the] PD district."[122] Sucette fails to point to any well-pleaded factual allegation allowing the Court to reasonably infer that the regulatory environment or the allowable uses of the property have changed.

---

[118] ECF No. 28 at 12 & n.51.
[119] ECF No. 1 at ¶ 122.
[120] ECF No. 28 at 12.
[121] *Id.*
[122] *Id.*

In sum, viewing only the well-pleaded allegations of the complaint, the Court finds that all of the *Penn Central* factors disfavor Sucette. Sucette therefore fails to plead facts plausibly establishing a regulatory taking under *Penn Central*. Because Sucette fails to plead a regulatory taking under *Penn Central*, Sucette fails to state a *Penn Central* regulatory-takings claim against the City. *See Degan*, 956 F.3d at 816.

Accordingly, the Court grants the City's motion to dismiss Sucette's federal regulatory-takings claims (Count 3).

### 3.    Due Process (Counts 5 and 6)

The City next contends that Sucette fails to state any claims against it for violations of substantive- and procedural-due-process protections under federal law. Because Sucette lacks a property interest protected by the federal Due Process Clause in the City Council's approval of its plan to develop the Sucette Harbor Project site, Sucette fails to state any due-process claims against the City under federal law.[123]

The Due Process Clause of the Fourteenth Amendment guarantees that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "The process due varies by the strength of the interests involved, but only actions that infringe enumerated interests—life, liberty, and property—require due process." *Maurer v. Independence Town*, 870 F.3d 380, 385 (5th Cir. 2017) (citing *Tex. Faculty Ass'n v. Univ. of Tex. at Dall.*, 946 F.2d 379, 383–84 (5th Cir. 1991)). "[T]o establish either a substantive or a procedural due process

---

[123] The property interests protected by the federal Due Process Clause differ from the property interests protected by the federal Takings Clause. *See Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 324 (5th Cir. 2022). The City's motion does not argue that LSU Health lacks a property interest protected by the federal Takings Clause, and this opinion expresses no view on that question.

violation by claiming denial of a property right," as Sucette aims to do here, Sucette "must first establish a denial of a constitutionally protected property right." *Bryan v. City of Madison*, 213 F.3d 267, 274 (5th Cir. 2000) (citations omitted). "If there is no protected property interest, there is no process due[.]" *Spuler v. Pickar*, 958 F.2d 103, 105 (5th Cir. 1992) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 568 (1976)).

Property interests "are not created by the Constitution" but "are created and their dimensions are defined" by independent sources, like state law. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). A party has a protected property interest in a benefit[124] if that party "show[s] that [it] ha[s] a 'legitimate claim of entitlement' to the interest [it] asserts." *Wigginton v. Jones*, 964 F.3d 329, 336 (5th Cir. 2020) (quoting *Roth*, 408 U.S. at 577). "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzalez*, 545 U.S. 748, 756 (2005) (citations omitted). Even so, a benefit may rise to the level of a protected entitlement if relevant statutes or regulations "place substantive limitations on official discretion." *Ridgely v. FEMA*, 512 F.3d 727, 735 (5th Cir. 2008) (quotation omitted). To decide if there are "substantive limitations on official discretion," the Court looks for "explicitly mandatory language" indicating that if criteria are met, a specific result must follow. *Id.* (quotation omitted).

---

[124] The City characterizes City Council approval of the plans to develop the Sucette Harbor Project as a "benefit." ECF No. 17-1 at 7. Sucette does not dispute that characterization or otherwise argue that the government-benefit analysis should not apply here. ECF No. 28 at 1–23. Sucette has therefore forfeited any challenge to the Court's use of the government-benefit framework to analyze its due-process claims. *See generally Rollins v. Home Depot USA*, 8 F.4th 393, 397–98 (5th Cir. 2021) (explaining the numerous ways a party can forfeit an argument by failing to adequately brief it).

Sucette fails to plead facts plausibly establishing a protected property interest in approval of its development plan for the Sucette Harbor Project. Sucette lacks "a protected entitlement" in approval of that development plan because Sucette "fails to cite explicitly mandatory language in" the CLURO that requires the City Council to approve a development plan for property zoned Planned District if certain criteria are met. *Wigginton*, 964 F.3d at 337 (quotation omitted). Because there is no "explicitly mandatory language" in the CLURO requiring the City Council to approve a development plan for property zoned Planned District, even if relevant guidelines are met, the City Council necessarily had discretion to approve or reject Sucette's plan. *See Town of Castle Rock*, 545 U.S. at 756 (citations omitted). And because the City Council had discretion to approve or reject Sucette's plan, Sucette did not have a protected property interest in approval of its plan. *Accord, e.g.*, *Da Vinci Inv.*, 747 F. App'x at 226 (property owner lacked a property interest protected by the Due Process Clause in city-council approval of a development plan because property owner failed to cite any explicit language in city ordinances requiring the council to approve a development plan when all guidelines are met). Without a protected property interest, Sucette's due-process claims necessarily fail. *See Bryan*, 213 F.3d at 276.

Sucette does not address the City's argument that Sucette's due-process claims fail as a matter of law because Sucette lacks a property interest protected by the Due Process Clause.[125] Sucette has therefore forfeited any argument opposing dismissal

---

[125] ECF No. 28 at 15–20.

of those due-process claims on that ground. *See, e.g.*, *Stevens*, 17 F.4th at 574 (holding that a party forfeited an argument on an issue by failing to adequately brief it).

Accordingly, the Court grants the City's motion to dismiss Sucette's federal due-process claims (Counts 5 and 6).

### 4.    Section 1983 (Count 8)

The City moves to dismiss Sucette's Section 1983 "claim." Sucette purports to assert one Section 1983 claim in one count. But Section 1983 is the means for enforcing all of Sucette's claims for alleged violations of the United States Constitution, with the possible exception of its federal takings claim.[126] That is because "[c]onstitutional rights do not typically come with a built-in cause of action to allow for private enforcement in courts"; they are enforced by "an independent cause of action," like Section 1983. *Devillier*, 601 U.S. at 295 (citations omitted). So, with the possible exception of its federal takings claim, Sucette's claims for federal constitutional violations must meet the requirements of Section 1983 and *Monell*.[127]

---

[126] The Fifth Circuit had held that the Takings Clause does not provide a right of action for takings claims against a state. *See Devillier v. State*, 53 F.4th 904, 904 (5th Cir. 2023) (per curiam). But the Supreme Court vacated the Fifth Circuit's judgment in an opinion that expressly leaves open the question whether a plaintiff has a cause of action arising directly under the Takings Clause. *See Devillier v. Texas*, 601 U.S. 285, 292 (2024) ("Our precedents do not cleanly answer the question whether a plaintiff has a cause of action arising directly under the Takings Clause."). So it is unclear whether Sucette's claim for violation of the Takings Clause must be brought under Section 1983. Because the parties have not briefed that legal question, this opinion does not try to answer it.

[127] Some district courts have disagreed on whether *Monell*'s requirements apply to federal takings claims. *Compare, e.g.*, *Lane v. City of Jasper*, No. 1:24-CV-150, 2025 WL 48360, at *4 (E.D. Tex. Jan. 8, 2025) (*Monell*'s requirements do not apply) *with Malloy v. Municipality of City of Com.*, No. 4:23-CV-333, 2023 WL 10352172, at *4 (E.D. Tex. July 14, 2023) (*Monell*'s requirements apply), *report and recommendation adopted*, 2024 WL 1020565 (E.D. Tex. Mar. 8, 2024). Without explicitly addressing that question, the Fifth Circuit recently applied *Monell*'s requirements to a federal takings claim and found those requirements met for purposes of a Rule 12(b)(6) analysis. *Maron Props., L.L.C. v. City of Hous.*, 78 F.4th 754, 759 (5th Cir. 2023). Here, Sucette makes no argument against applying *Monell*'s requirements. *See generally* ECF No. 28. So Sucette has forfeited any challenge to the Court's use of the *Monell* framework to analyze its Section 1983 "claim." *See Rollins*, 8 F.4th at 397–98.

"Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quotations omitted). "It provides that any person who, under color of state law, deprives another of 'any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.'" *St. Maron Props., L.L.C.*, 78 F.4th at 759 (quoting 42 U.S.C. § 1983). "Municipalities" like the City "are persons susceptible to suit under § 1983, but they cannot be found liable on a theory of vicarious liability or respondeat superior." *Id.* at 759–60 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–92 (1978)).

To state a *Monell* claim against the City, Sucette "must plead facts that plausibly establish that '(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right.'" *Id.* at 760 (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018)). The City meaningfully challenges only the "official policy" element.[128]

Sucette can show an "official policy" in three ways: "(1) written policy statements, ordinances, or regulations; (2) a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy; or

---

[128] ECF No. 17-1 at 18–20. The City devotes three sentences to the "moving force" element. *Id.* at 20. It contends that element is not met because, on its reading of the complaint, Zuckerman's actions, individually and alone, "resulted in denial of" Sucette's application. *Id.* The City thus reasons that its policy cannot be the "moving force" of the alleged violation of Sucette's rights. *Id.* The Court is not persuaded. Fairly read, the complaint does not attribute the rejection of the Sucette Harbor Project to Zuckerman alone—after all, Zuckerman is just one member of the five-member City Council that unanimously rejected Sucette's plan application; the complaint also attributes the rejection to the City through the actions of its final policymaker, the City Council. *See, e.g.*, ECF No. 1 at ¶¶, 72, 75, 76.

(3) even a single decision may constitute municipal policy in rare circumstances, when the official or entity [with] final policymaking authority for an action performed the specific act that forms the basis of the § 1983 claim." *Id.* (quotation omitted).

Sucette shows an "official policy" in the third way. "If the decision to adopt [a] particular course of action is properly made by th[e] government's authorized decisionmaker, it surely represents an act of official government policy." *Id.* (quotation omitted). Sucette alleges that the City Council—an authorized decisionmaker for the City—denied Sucette's application in alleged violation of Sucette's constitutional rights.[129] "[A] single decision by" a "properly constituted legislative body" like the City Council "unquestionably constitutes an act of official government policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) (citations omitted). So Sucette pleads facts sufficient to satisfy the "official policy" element.

Accordingly, because Sucette pleads facts sufficient to show an "official policy," and because the City has not meaningfully challenged any other requirement to plead a *Monell* claim, the Court denies the City's motion to dismiss Sucette's Section 1983 "claim" (Count 8). But this opinion expresses no view on whether Sucette pleads facts sufficient to satisfy other requirements of *Monell* that the City's motion does not specifically challenge. To be clear, the Court's denial of the City's motion to dismiss the only claim that Sucette labels a Section 1983 "claim" (Count 8) does not save Sucette's federal regulatory-takings claim (Count 3) or Sucette's federal due-process claims (Counts 5 and 6). Despite the absence of Section 1983 labels, and with the

---

[129] ECF No. 1 at ¶¶ 1, 10, 72, 75, 76.

possible exception of the federal regulatory-takings claim, those claims are necessarily brought under Section 1983. *See Devillier*, 601 U.S. at 295. Because Sucette's Section 1983 claims against the City require an underlying violation of federal law, *see Winder v. Gallardo*, 118 F.4th 638, 647 (5th Cir. 2024), and because the Court has held that Sucette fails to plead underlying violations of the federal Takings and Due Process Clauses, Counts 3, 5, and 6 of Sucette's complaint necessarily fail to state a claim against the City. Sucette's only remaining Section 1983 claim is the claim (Count 7) for alleged violations of the Equal Protection Clause.

### 5.    Declaratory Relief (Counts 1 and 2)

The City next contends that the Court should dismiss those "portions" of Sucette's requests for declaratory relief that "seek declarations duplicative of the constitutional claims [Sucette] assert[s] in other counts of the [c]omplaint."[130]

"In a case of actual controversy within its jurisdiction," the Declaratory Judgment Act allows a federal court to "declare the rights and other legal relations of any interested party seeking such a declaration[.]" 28 U.S.C. § 2201(a). The Declaratory Judgment Act does not create an independent cause of action; it is purely remedial. *See Braidwood Mgmt., Inc., v. EEOC*, 70 F.4th 914, 932 (5th Cir. 2023).

To be sure, some district courts in the Fifth Circuit dismiss requests for declaratory relief "if they add nothing to the lawsuit." *Robinson v. Hunt Cnty.*, 912 F.3d 440, 450 (5th Cir. 2019) (collecting cases). But the Fifth Circuit has suggested that district courts should not dismiss a request for declaratory relief as "superfluous"

---

[130] ECF No. 17-1 at 20.

if "constitutional claims" are presented, and the request for declaratory relief "appears distinct from [the plaintiff's] claim for monetary damages." *Id.* at 450–51.

That is the case here. A constitutional claim remains in this case—the equal-protection claim (Count 7)—and Sucette's requests for declaratory relief "appear[ ] distinct" from Sucette's request for compensatory damages.[131] *Id.* So the Court is not persuaded that Sucette's requests for declaratory relief are "superfluous." *Id.*

Accordingly, the Court denies the City's motion to dismiss Sucette's requests for declaratory relief (Counts 1 and 2).

## C.    Leave to Amend

The Court dismisses Sucette's federal and state takings claims (Counts 3 and 4) as well as Sucette's federal due-process claims (Counts 5 and 6) with prejudice and without leave to amend. That is for two independent reasons.

First, Sucette has not properly moved for leave to amend. Sucette relegates its amendment request to a one-sentence footnote asking for "an opportunity to amend the [c]omplaint prior to the Court ruling on the . . . [m]otion to [d]ismiss" and "only to the extent deemed necessary or equitable by this Court[.]"[132] But "a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1170 (5th Cir. 2022) (quotation omitted); *cf. Porretto v. City of Galveston Park Bd. of Trs.*,

---

[131] *Compare* ECF No. 1 at ¶¶ 92–100 (requests for declaratory relief) *with id.* at prayer (request for compensatory damages).

[132] ECF No. 28 at 22 n. 82.

113 F.4th 469, 491 (5th Cir. 2024) (affirming denial of "bare bones" request in motion-to-dismiss opposition for "an opportunity to amend the [c]omplaint if the Court deems additional factual allegations are necessary" (quotation omitted)).

Second, even if Sucette's bare, footnoted amendment request were a proper motion for leave under Rule 15(a), the Court would still deny Sucette leave to amend because Sucette gives no indication that it could plead facts sufficient to state plausible takings and due-process claims against the City. As for the state-law regulatory-takings claim, Sucette gives no indication that it could plead facts sufficient to state a claim against the City. That is for two reasons. First, as a matter of Louisiana law, Sucette lacks a recognized species of property right in the approval of its development plan for the Sucette Harbor Project because that development was "entirely contingent" on the City Council's approval "in accordance with" the City's "regulatory scheme." *Pointe Prospect, LLC*, 368 So. 3d at 1122–23. Second, Sucette implicitly concedes that it cannot plead that element of its regulatory-takings claim because its opposition does not even attempt to show how it did, in fact, plead a recognized species of property right. As for the federal regulatory-takings claim under *Lucas*, Sucette offers no indication that it could, consistent with Rule 11, plead facts plausibly establishing that the City Council's failure to approve one planned development for the property permanently deprives the property of all economically beneficial use. As for the federal regulatory-takings claim under *Penn Central*, Sucette supplies no basis for the Court to conclude that Sucette could plead facts that would flip any *Penn Central* factor in Sucette's favor. Finally, as for the due-process

claims, there is no basis to believe that Sucette could plead plausible claims for at least two independent reasons. First, as a matter of law, Sucette lacks a property interest protected by the Due Process Clause in the City Council's approval of its particular development plan for the Sucette Harbor Project. The CLURO lacks the explicitly mandatory language needed to create a property interest protected by the Due Process Clause; no amendment would change that. Second, Sucette implicitly concedes that it cannot plead a property interest protected by the Due Process Clause by failing even to address the City's argument on this important threshold point.

## IV.  CONCLUSION

Accordingly,

**IT IS ORDERED** that the City's Rule 12(b)(1) motion[133] to dismiss for lack of subject-matter jurisdiction is **DENIED**.

**IT IS FURTHER ORDERED** that the City's Rule 12(b)(6) motion[134] to dismiss for failure to state a claim is **GRANTED IN PART** and **DENIED IN PART** as outlined above. Sucette's takings claims (Counts 3 and 4) and Sucette's due-process claims (Counts 5 and 6) are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 31st day of March, 2025.

_____
BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[133] ECF No. 16.
[134] ECF No. 17.