UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WOODWARD HARBOR LLC, ET AL. | CIVIL ACTION |
| VERSUS | NO.  23-5824 |
| CITY OF MANDEVILLE, ET AL. | SECTION: "O" (3) |

## <u>ORDER AND REASONS</u>

Proposed Intervenors, Lawrence Grundmann, Kathleen Grundmann, Emory Clark, Thomas Snedeker, Robert Ellis, Emily Ellis, Walter Bahn, Mary Bahn, Ellen A. O'Connell, James K. O'Connell, Tom Whalen, Teri Whalen, Ralph Whalen, Christopher G. Brantley, Ph.D., and Orleans Audubon Society (collectively "Movants"), filed a Motion to Intervene under Fed. R. Civ. P. 24 ("Rule 24").[1] Plaintiffs, Woodward Harbor, L.L.C. and LSU Health Foundation New Orleans, filed an opposition,[2] and Movants replied.[3] Oral argument was heard on April 8, 2025.[4]

## I.    BACKGROUND

Plaintiffs seek to develop a fifteen-acre lakefront property in Mandeville.[5] The proposed "Sucette Harbor" development would include a boutique hotel, age-restricted apartments, a restaurant, and a 103-boat marina.[6] Plaintiffs submitted

---

[1] R. Doc. 64.
[2] R. Doc. 67.
[3] R. Doc. 68.
[4] R. Doc. 74.
[5] R. Doc. 1, ¶ 1.
[6] *Id.* at ¶ 19.

their development application in August 2022.[7] Plaintiffs allege that the City of Mandeville ("City") has thwarted their efforts by purporting to change the location's zoning requirements,[8] "endlessly" questioning the proposal,[9] and holding numerous hearings that were "irrational" and unproductive.[10] This, Plaintiffs maintain, was part of an effort to kill the proposed development through "death by a thousand cuts."[11] In September 2023, the City Council rejected the Sucette Harbor development.[12] Plaintiffs filed this lawsuit the next month.

Plaintiffs sued the City and one of its councilmembers, Jason Zuckerman. Although primarily a regulatory takings case, Plaintiffs also alleged due process, equal protection, and declaratory judgment claims.[13] Defendants promptly moved for dismissal under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[14] Only the equal protection claim was not subject to a dismissal motion.

While the motions were pending, a settlement conference was held in February 2025.[15] That settlement conference was unsuccessful. In March 2025,[16] the Orleans

---

[7] *Id.* at ¶ 49.

[8] *Id.* at ¶ 38.

[9] *Id.* at ¶ 55.

[10] *Id.* at ¶ 58.

[11] *Id.*

[12] *Id.* at ¶ 72.

[13] R. Doc. 69 at 4–9 (summarizing claims).

[14] R. Docs. 15-17.

[15] R. Doc. 49 (February 6, 2025 notice of conference), 58 (minute entry from February 24, 2025 conference).

[16] Movants' first efforts to intervene coincided with the settlement conference, but their earlier filings were deficient. *See, e.g.*, R. Docs. 53, 55, 61.

Audubon Society and fourteen Mandeville residents filed the instant Motion to Intervene.

The Orleans Audubon Society is a non-profit organization with "1,052 conservation-minded members" that has "advocated for the protection and restoration of the resources of the Lake Pontchartrain Basin for nearly 75 years."[17] Some of its members own property adjacent to the proposed development or have special knowledge of conservation issues.[18] As for the fourteen Mandeville residents, some are neighboring property owners; others have specialized knowledge and experience that they believe are relevant to this litigation; and others simply object to the development. Movants seek to defend against Plaintiffs' claims and ensure that any settlement does not result in the development of Sucette Harbor.[19]

Defendants did not file an opposition to the Motion to Intervene. Plaintiffs, however, oppose the attempted intervention. Before oral argument on the Motion to Intervene, the District Court dismissed all claims against Mr. Zuckerman and most claims against the City. The District Court left intact only the equal protection claim against the City and the request for declaratory relief.

Plaintiffs assert that the District Court's ruling moots any putative need for intervention.[20] Intervenors recognize that their proposed pleading must be updated

---

[17] R. Doc. 64-1 at 4–5.
[18] *Id.*
[19] *Id.* at 20.
[20] R. Doc. 67 at 8; R. Doc. 72.

in the light of the recent ruling, but maintain their request to intervene. Previously, Intervenors proposed to file a Rule 12(b)(6) motion co-extensive with the one filed by the City. Now that the District Court has addressed the City's Rule 12(b)(6) motion, Intervenors seek to proceed with further defense of the litigation. At oral argument, they acknowledged that this may include a motion to dismiss or for summary judgment on the remaining claims.

The parties agreed at oral argument that it is preferable for the Court to rule on the motion to intervene without requiring Movants to re-file and update their motion to reflect the District Court ruling. They also agreed that, subject to their dispute about whether intervention is appropriate in the first instance, Movants could submit an updated proposed pleading. As explained below, however, submission of an updated pleading is unnecessary. Setting aside whether the motion was meritorious when filed, recent developments have significantly weakened the case for intervention.

## II.    LAW AND ANALYSIS

### A.    Standard of Law

Movants seek intervention of right under Rule 24(a) and, alternatively, permissive intervention under Rule 24(b).

Under Rule 24(a), intervention of right requires the following elements:

(1) The application must be timely; (2) the applicant must have an interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability

to protect its interest; and (4) the applicant's interest must be
inadequately represented by the existing parties to the suit.

*Miller v. Vilsack*, No. 21-11271, 2022 WL 851782, at \*2 (5th Cir. Mar. 22,
2022)(quoting *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014)). Movants have
the burden to establish the right to intervene. *La Union del Pueblo Entero v. Abbott*,
29 F.4th 299, 305 (5th Cir. 2022). Yet, "Rule 24 is to be liberally construed." *Texas v.
U.S.*, 805 F.3d 653, 656 (5th Cir. 2015)(quoting *Brumfield*, 749 F.3d at 341). Courts
are instructed to permit intervention "where no one would be hurt and greater justice
could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)(quoting
*McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970)).

If the court determines that an applicant has a right to intervene, the analysis
ends. *Edwards v. City of Houston*, 78 F.3d 983, 1006 (5th Cir. 1996) (noting that
"[b]ecause we conclude that these applicants were entitled to intervene of right into
these proceedings, we need not discuss the merits of [permissive intervention]"). Yet
even if an applicant fails to satisfy the requirements to intervene as of right, Rule
24(b) gives courts discretion to permit intervention.

As relevant here, Rule 24(b) provides:

On timely motion, the court may permit anyone to intervene who . . . has
a claim or defense that shares with the main action a common question
of law or fact . . . [i]n exercising its discretion, the court must consider
whether the intervention will unduly delay or prejudice the adjudication
of the original parties' rights.

Thus, courts have considerable discretion in determining whether to allow permissive

intervention. *See, e.g.*, *Louisiana v. Burgum*, 132 F.4th 918, 923–24 (5th Cir. 2025)(concluding that courts have to deny permissive intervention even when all Rule 24(b) requirements are satisfied).

      **B.**    **Movants are not entitled to intervention as of right.**

           *1.*    *Movants have shown that their motion is timely, but in doing so they necessarily weaken their substantive arguments for intervention.*

The Fifth Circuit has identified four factors relevant to whether a motion to intervene is timely. *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir. 1977). The *Stallworth* factors are: "the length of time the movant waited to file, the prejudice to the existing parties from any delay, the prejudice to the movant if intervention is denied, and any unusual circumstances." *Rotstain v. Mendez*, 986 F.3d 931, 937 (5th Cir. 2021)(quoting *Stallworth*, 558 F.2d at 264–66). "The most important circumstance relating to timeliness is that the [movant seeks] to intervene as soon as it bec[omes] clear that [its] interests would no longer be protected by the parties in the case." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 279–80 (2022)(internal quotation marks omitted). Thus, delay is measured from the time "when [the intervenor] became aware that its interests would no longer be protected by the original parties[,]" as opposed to the date the intervenor became aware of a lawsuit. *Sierra Club*, 18 F.3d at 1206 (citing *Stallworth*, 558 F.2d at 264–65).

Movants argue that their motion is timely because they acted within four weeks after the settlement conference put them on notice of Defendant's alleged

inadequate representation.[21] The Fifth Circuit has found that this length of time weighs in favor of intervention as of right. *See Sierra Club*, 18 F.3d at 1206 (finding a timely intervention motion after a delay of three weeks); *Edwards*, 78 F.3d at 1000 (allowing applicants to intervene after separate delays of thirty-seven and forty-seven days); *John Doe No. 1*, 256 F.3d at 376 (holding that a one-month delay was timely). Measured from the date of the settlement conference, Movants easily satisfy the timeliness requirement.

By contrast, if Movants relied on the inception of the litigation as the relevant start date, they would have had to explain why they waited seventeen months to intervene. That would be tough. *See Rotstain*, 986 F.3d at 938 (determining that the district court did not abuse its discretion by denying intervention when a movant did not attempt to intervene until eighteen months after denial of class certification). Thus, Movants' strategic decision to use the settlement conference as the start date is both legally sound and savvy. This position, however, is in tension with Movants' arguments on the alleged inadequacy of the City's representation of their interests. Section II(B)(4) addresses that tension.

      2.   *At least some of the Movants have established the requisite property or transactional interest.*

A proposed intervenor must have a property or transactional interest relating to the underlying matter. There is no blackletter definition of an interest in this

---

[21] R. Doc. 61.

context. Courts have found a movant must show a "direct, substantial, legally protectable interest in the proceedings." *La Union del Pueblo Entero*, 29 F.4th at 305 (quoting *Edwards*, 78 F.3d at 995)(internal quotation marks omitted).

Property interests are some of "the most elementary type of right that Rule 24(a) is designed to protect." *Texas*, 805 F.3d at 658 (quoting *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970)). Non-property interests may also support intervention if they are "concrete, personalized, and legally protectable." *Texas*, 805 F.3d at 658. An interest is sufficient if the law deems it worthy of protection, even if an intervenor would not have standing to invoke the law's protection. *Id.* at 659. A court must deny intervention as of right, however, when a movant attempts to intervene "solely for ideological, economic, or precedential reasons[.]" *Id.* at 657. Put differently, intervention must be rejected when an intervenor merely prefers one outcome compared to another. *Id.*

Some of the Movants have established the requisite property interest in this proceeding. Jurisprudence confirms that Rule 24(a) is "designed to protect" property interests like those of the adjacent landowners. *Texas*, 805 F.3d at 658 (quotation omitted). The Court need not wade through the potential ideological concerns raised by the other movants. For the reasons set forth in Section II(B)(4), Movants fail to satisfy the inadequate representation requirements. *See Miller*, 2022 WL 851782, at *2.

>        3.    *At least some of the Movants have shown the possibility of an impairment of their interests.*

Once a proposed intervenor establishes an interest in the proceeding, it must also demonstrate that "the disposition of the action may, as a practical matter, impair or impede [its] ability to protect [its] interest." *Sierra Club*, 18 F.3d at 1207. A proposed intervenor only needs to demonstrate the possibility that its interest could be impaired. *La Union del Pueblo Entero*, 29 F.4th at 307 (citing *Brumfield*, 749 F.3d at 344–45). But the impairment may not be merely theoretical. *Brumfield*, 749 F.3d at 344.

The Movants include adjacent property owners who have shown the requisite possible impairment. Adjudication of this suit will directly impact their property, potentially creating effects such as additional traffic, pollution, and property value fluctuations. If they intervene, these movants could defend their interests and raise their concerns in the litigation.

>        4.    *None of the Movants satisfies the inadequate representation requirement.*

A proposed intervenor must demonstrate that its interest is inadequately represented by the existing parties in the underlying suit. The burden is on the proposed intervenor. *Edwards*, 78 F.3d at 1005. An applicant need not prove inadequate representation to a mathematical certainty. Instead, it need only show the possibility of inadequate representation. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). Although minimal, the burden has "teeth[.]" *Brumfield*,

749 F.3d at 345.

There are two circumstances in which proposed intervenors must overcome a presumption that the existing parties adequately represent them. The first presumption arises when a proposed intervenor "has the same ultimate objective as a party to the lawsuit." *Edwards*, 78 F.3d at 1005. To overcome that presumption, the proposed intervenor must show "adversity of interest, collusion, or nonfeasance on the part of the existing party . . . ." *Id.* A proposed intervenor may "establish an adversity of interest if 'its interests diverge from the putative representative's interests in a manner germane to the case.'" *La Union del Pueblo Entero*, 29 F.4th at 308 (quoting *Texas*, 805 F.3d at 662).

The second presumption arises when a "putative representative is a governmental body or officer charged by law with representing the interests of the absentee[.]" *Id.* A proposed intervenor may rebut this presumption by demonstrating that its interests are different from the governmental entity. *Id.* Further, this presumption is limited to suits implicating "matters of sovereign interest." *Miller*, 2022 WL 851782, at *2 (quoting *Edwards*, 78 F.3d at 1005).

The motion to intervene falls within and fails under both presumptions. First, the City and Movants share the same ultimate objective. The City is defending the legality of its rejection of the Sucette Harbor development, and Movants seek to do the same. Like the Movants, the City has an interest in eliminating traffic, reducing pollution, and increasing property values. The fact that the Movants' proposed

dismissal motion mirrored the City's own motion confirms their shared objective.[22] *Edwards*, 78 F.3d at 1005.

Movants have not rebutted the first presumption. *See La Union del Pueblo Entero*, 29 F.4th at 308. At oral argument, Movants indicated they may wish to proactively defend the equal protection claim by filing a motion directed at that claim.[23] The City, however, may prefer a different approach. The decision of when and how to defend against the few remaining claims reflects litigation strategy. "A proposed intervenor's desire to present an additional argument or a variation on an argument does not establish inadequate representation." *Guenther v. BP Retirement Accumulation Plan*, 50 F.4th 536, 543 (5th Cir. 2022) (quoting *SEC v. LBRY, Inc.*, 26 F.4th 96, 99–100 (1st Cir. 2022)). If litigation strategy disputes with an existing party established inadequate representation, "Rule 24 would have no meaning." *Guenther*, 50 F.4th at 544 (internal quotation marks omitted).

To establish inadequate representation, Movants highlight the City's history with respect to two developments, which Movants label the "Copeland Catastrophe" and the "Port Marigny Fiasco."[24] The "Copeland Catastrophe" occurred more than fifteen years ago. According to Movants, an attempt to develop a lakefront property resulted in a complete "wasteland."[25] Although there are superficial factual

---

[22] R. Docs. 17, 64.
[23] R. Doc. 74.
[24] R. Doc. 64-1 at 8–10.
[25] *Id.* at 8.

similarities (the same marina component is involved in the instant case), these similarities do not rebut the presumption of adequate representation. At most, this history shows that the Intervenors and the City have not always agreed on development decisions. Here, however, they do agree. Neither one is in favor of Sucette Harbor.

Movants maintain that, although the docket reflects that their position is aligned with the City's, history shows that reflection cannot be trusted. They point to the "Port Marigny Fiasco" as evidence.[26] According to Movants, that case involved a 2017 lawsuit against the City by disappointed developers.[27] Certain Mandeville residents sought to intervene but were denied the opportunity, including because their interests were aligned with those of the City.[28] Ultimately, however, the City entered into a Consent Judgment and Settlement Ordinance that approved a "massive mixed use development similar to Sucette Harbor."[29] Thus, the proposed intervenors' fears almost[30] materialized.

The Port Marigny incident is persuasive. But if that 2017 lawsuit is sufficient to establish the City's inadequate representation, then it calls into question why Movants waited seventeen months before attempting to intervene in this lawsuit. In

---

[26] *Id.* at 8–10. The description of that case provided herein is taken from Movants' briefing.

[27] R. Doc. 64-1.

[28] R. Doc. 64-1 at 10.

[29] *Id.*

[30] Intervenors explain that, "as luck would have it," financing problems thwarted the development. *Id.* at 11.

other words, Movants rely on the Port Marigny incident to establish inadequate representation, but, if given credence, that same incident is fatal to their argument that intervention is timely.

Movants could attempt to thread the needle by suggesting that the "Copeland Catastrophe" and "Port Marigny" incidents are probative, but the February 2025 settlement conference in this case was the last straw. That argument also fizzles because the settlement conference is over. Thus, there is no adversity of interest "on any matter currently before [the Court]." *Louisiana*, 132 F.4th at 923 (internal quotation marks omitted). Since Movants only raise the potential for divergent interests in the future, they are unable to rebut the presumption of adequate representation. *See id.*

For similar reasons, Movants likewise fail to rebut the second presumption of inadequate representation. That presumption applies because the City is a governmental body charged with representing the interests of its citizens, including the Movants, and the rejection of the Sucette Harbor development was an exercise of the City's sovereign prerogative. *Brumfield*, 749 F.3d at 345. Movants have failed to illustrate a divergence of interests between themselves and the City at this stage.[31] Movants' chief concern is that the City may settle with Plaintiffs and approve some

---

[31] And, as explained above, if the so-called "Copeland Catastrophe" and "Port Marigny Fiasco" were sufficient proof of inadequate representation, then the intervention is grossly untimely.

version of the Sucette Harbor development that goes beyond residential use.[32] Yet the last settlement conference was unsuccessful, and nothing suggests that the District Court's dismissal of nearly all of Plaintiffs' claims has increased the City's appetite for settlement.[33] Although settlement is always a possibility, "the mere possibility that a party *may* at some future time enter into a settlement cannot alone show inadequate representation." *Guenther*, 12 F.3d at 543 (quoting *Bush v. Viterna*, 740 F.2d 350, 358 (5th Cir. 1984))(emphasis original).

### C.    Permissive Intervention

Even if an applicant fails to satisfy the requirements to intervene as of right, Rule 24(b) gives courts discretion to permit intervention. In short, a court may allow intervention if "a timely motion is filed and the applicant 'has a claim or defense that shares with the main action a common question of law or fact.'" *Rotstain*, 986 F.3d at 942 (quoting Fed. R. Civ. P. 24(b)(1)(B)). Rule 24(b) provides the district court with "sound discretion" when ruling on permissive intervention. *Hopwood v. State of Tex.*, 21 F.3d 603, 606 (5th Cir. 1994). "Permissive intervention under Rule 24(b) is 'wholly discretionary' and 'may be denied even when the requirements of Rule 24(b) are satisfied.'" *Louisiana v. Burgum*, 132 F.4th at 923 (quoting *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 317 (5th Cir. 2021)).

Courts engage in a two-step inquiry when analyzing permissive intervention.

---

[32] R. Doc. 68 at 8–9.
[33] R. Doc. 70.

*Stallworth*, 558 F.2d at 269. First, the court decides whether the proposed intervenor's claim or defense and the underlying suit possess a common question of law or fact. *Id.* If so, then the court "must exercise its discretion in deciding whether intervention should be allowed." *Id.*

Discretion counsels against allowing Movants permissive intervention under Rule 24(b) in this case—at least on the present record. True, Movants' proposed defenses and those of the City share common questions of law and fact. But principles of judicial efficiency and respect for litigant autonomy counsel against permissive intervention. The Plaintiffs have already lost on almost all their claims. When and how to defend against the remaining claims is a strategy decision that must be left to the City.

Perhaps the City is satisfied with the status quo. There is no Sucette Harbor development and the lawsuit's scope has shrunk significantly. Inertia may work in the City's favor. Or perhaps the City is prioritizing other issues. The City and Mr. Zuckerman have jointly moved to recover attorney's fees from Plaintiffs relative to the successful defense of Mr. Zuckerman.[34] Having already incurred more than $40,000 in attorney's fees relative to Mr. Zuckerman's defense alone, the City may be reluctant to escalate the litigation at this stage. Or perhaps the City is already drafting its next brief. Each possibility is mere speculation. Yet this speculation

---

[34] R. Doc. 75. The motion states that, while the City was "more than willing" to assist in Mr. Zuckerman's defense, it was also required to do so by local ordinance. R. Doc. 75-1, p. 11.

illustrates that allowing an outside entity to take control of these litigation decisions would constitute an undue intrusion.

The City's litigation strategy is commended to its discretion. If private parties want to help the City fight the lawsuit, they are free to do so through other channels, including the submission of amicus briefs. *See Louisiana*, 132 F.4th at 924 ("[W]here the movants express a unique view offered by neither party that they want heard, the proper procedure is to move to appear as *amici curiae*, not to move to intervene.")(internal quotation marks and citations omitted); *Richardson v. Flores*, 979 F.3d 1102, 1106 (5th Cir. 2020)("To the extent Movants want their voices heard, however, the proper procedure is to move to appear as *amici curiae*, not to move to intervene."). Movants are not entitled, however, to intervene and become defendants to this lawsuit on the current record.

## III.    CONCLUSION

For these reasons,

**IT IS ORDERED** that Movants' Motion to Intervene (R. Doc. 64) is **DENIED.**

New Orleans, Louisiana, this 24th day of April, 2025.

_____
EVA J. DOSSIER
UNITED STATES MAGISTRATE JUDGE