UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| WOODWARD HARBOR, L.L.C. and | * | CIVIL ACTION NO.: 2:23-cv-05824 |
| LSU HEALTH FOUNDATION | * | |
| NEW ORLEANS | * | JUDGE BRANDON S. LONG |
| | * | |
| VERSUS | * | MAG. JUDGE EVA J. DOSSIER |
| | * | |
| CITY OF MANDEVILLE and | * | SECTION "O" – DIVISION 3 |
| JASON ZUCKERMAN, INDIVIDUALLY | * | |
| | * | |

*************************************************************************

**JOINT OPPOSITION TO SECOND MOTION TO DISMISS
FILED BY THE CITY OF MANDEVILLE**

Plaintiffs, Woodward Harbor, L.L.C. and LSU Health Foundation New Orleans, respectfully submit this Opposition to the Second Motion to Dismiss[1] filed by the City of Mandeville ("City") pursuant to Rule 12(b)(6). The motion is a procedurally barred attempt at a do-over. Even if this second attempt was permitted, Plaintiffs have clearly pled sufficient facts to state a claim for relief that the City violated its equal protection rights and is liable under Section 1983 for damages, injunctive and declaratory relief. Accordingly, the Second Motion to Dismiss should be denied.

**I.   THE CITY'S SECOND MOTION TO DISMISS IS PROCEDURALLY BARRED BY RULE 12(g)(2).**

The City of Mandeville's second motion to dismiss under Rule 12(b)(6) must be denied because it is procedurally barred under Federal Rule of Civil Procedure 12(g)(2). That rule prohibits a party from filing a successive Rule 12(b) motions raising a defense that was available but not asserted in a prior motion. The City had a full and fair opportunity to challenge Plaintiffs'

---

[1] R. Doc. 88

equal protection claim in its first Rule 12(b)(6) motion but failed to do so. Its effort to raise this defense now violates both the text and intent of Rule 12(g)(2).

### A. Rule 12(g)(2) Prohibits Successive Rule 12(b)(6) Motions When the Defense Was Previously Available.

Rule 12(g)(2) provides:

> Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

This rule prevents defendants from engaging in piecemeal litigation by splitting defenses across multiple motions to dismiss. In *Enlow v. Tishomingo County, Mississippi*, 962 F.2d 501, 504 (5th Cir. 1992), the Fifth Circuit held:

> Rule 12(g), by its terms, prohibits the filing of a second motion to dismiss for failure to state a claim when the defense was available but not raised in the initial Rule 12(b) motion.

The court affirmed the denial of a second motion to dismiss where the defendant had failed to raise the defense earlier. This is directly analogous to the City's failure to challenge the equal protection claim in its first motion here.

Other courts have followed this reasoning. In *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006), the Eleventh Circuit noted that defendants who fail to raise an available Rule 12 defense in a pre-answer motion may not raise that defense in a later Rule 12 motion. The same rule applies here: the City's failure to challenge Plaintiffs' equal protection claim in its first pre-answer motion bars it from doing so now. Once the Court ruled on the City's first Rule 12(b)(6) motion, the opportunity to raise omitted defenses was foreclosed under Rule 12(g)(2).

**B. Rule 12(h)(2) Does Not Permit a Second Rule 12(b)(6) Motion.**

The City wrongly relies on Rule 12(h)(2) to justify its second 12(b)(6) motion. That rule states:

> Failure to state a claim upon which relief can be granted… may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial.

Notably absent from this list is a second Rule 12(b)(6) motion. The City is not barred from raising the failure to state a claim defense to the equal protection claim *after* it files its answer to the Complaint, either via a motion for judgment on the pleadings or at trial, but it cannot use a second pre-answer Rule 12(b)(6) motion to raise it when the defense to the equal protection claim was available when the first 12(b)(6) was filed, the first 12(b)(6) was fully briefed by the parties and considered and adjudicated by the Court and nothing in the case has changed to warrant a second bite at the apple.

**C. The City's Cited Cases Are Distinguishable and Do Not Support Successive Motions in This Context**

The City cites three cases in support of its successive motion: *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, *Doe v. Columbia-Brazoria ISD*, and *Standfield v. St. Ann Lodging*. None of these cases supports the City's position under the circumstances presented here.

In *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137 (5th Cir. 2007), the defendant filed a 12(b)(2) motion and a 12(b)(6) motion while the case was pending in the Southern District of Ohio. Realizing it had personal jurisdiction issues over Belo with the case in Ohio, and before the Ohio court ruled on the 12(b)(6) motion, the plaintiff moved to transfer the case to the Northern District of Texas. After transfer, the defendant filed a second 12(b)(6) urging the case

3

should be dismissed on statute of limitation grounds, and that motion was granted was granted by the Texas court. The Ohio court never decided the 12(b)(6) motion in that case. *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.* does not stand for the proposition that a party may file a second 12(b)(6) motion after the first one has been fully adjudicated, which are the circumstances here.

In *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681 (5th Cir. 2017), the defendant filed a 12(b)(6) motion which was summarily denied by the district court but the district court specifically reserved to the defendant the right to re-urge the motion. At a subsequent status conference the defendant was told it could re-urge the 12(b)(6) motion, it was re-urged, and it was granted. The grounds for the original 12(b)(6) motion and the re-urged 12(b)(6) motion were the same.[2] Our case is factually distinguishable as the grounds asserted in the City's second 12(b)(6) motion were not raised in its first 12(b)(6) motion even though those grounds were available. Additionally, the *Doe* case involved a procedural anomaly in that the first 12(b)(6) was summarily denied with a specific reservation to allow the defendant to re-urge it. Here, the Court exhaustively examined the issues raised in the first 12(b)(6) motion[3] and now the City wants the Court to consider new grounds for dismissal.

*Standfield v. St. Ann Lodging, LLC*, No. 18-1555, 2019 WL 1199760 (E.D. La. Mar. 14, 2019) is likewise factually inapposite. In that case, the defendant filed a 12(b)(6) motion in response to a third amended complaint. The plaintiff argued that Rule 12(g) barred the defendant from filing a 12(b)(6) motion when it did not do so in response to the original, first and second amended complaints. Judge Vance noted in *Standfield* that Rule 12(g) "…is inapplicable here

---

[2] See *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, Docket No. 3:14-cv-00405, Southern District of Texas, R. Doc. 18 (original 12(b)(6) motion) and R. Doc. 31 (re-urged 12(b)(6) motion).
[3] The ruling on the first 12(b)(6) motion is 48 pages long. R. Doc. 70.

because St. Ann Lodging is not attempting to file successive motions to dismiss. This is the first Rule 12(b)(6) motion that St. Ann Lodging has filed in this action."

The City had a full opportunity to challenge Plaintiffs' equal protection claim in its original Rule 12(b)(6) motion and chose not to. The Advisory Committee's notes to Rule 12(g) explain that the purpose of the rule is to prevent parties from delaying the action by raising multiple motions. The notes also clarify that the rule applies to defenses that are then available to the party, meaning they are defenses that were known or reasonably should have been known at the time of the initial motion.

Rule 12(g) plays a crucial role in managing litigation by promoting early and comprehensive resolution of disputes. It encourages parties to address all relevant issues at an early stage, avoiding later delays and potential procedural pitfalls. The City has failed to address, in any respect, why it did not request dismissal of the equal protection claim when it filed its first 12(b)(6) on December 1, 2023. Its attempt to parse out favorable language from cases with completely distinguishable facts should be repudiated by the Court. The law does not sanction the filing of successive 12(b)(6) motions when the Court fully considers the merits of the first motion and the grounds for the second were available when the first motion was filed.[4] The City has not cited any cases to the contrary.

---

[4] The Complaint here sets forth eight separate counts. If the City's position was correct, it could potentially file up to eight separate 12(b)(6) motions before being required to answer the Complaint.

## II. ASSUMING THE CITY CAN FILE A SECOND 12(b)(6) MOTION, THE COMPLAINT STATES A CLAIM FOR RELIEF FOR DENIAL OF EQUAL PROTECTION

Plaintiffs spent over a year engaged in good faith with the City's Planning and Zoning Commission, participating in nine separate public hearings, addressing concerns raised by the community and city officials, and redesigning aspects of the Sucette Harbor project in reliance on representations by the City. Ultimately, the City Council, led by council member Jason Zuckerman, voted unanimously to deny Plaintiffs' application without any rational basis and under newly manufactured standards not applied to other similarly situated developments. This constitutes a textbook violation of the Equal Protection Clause.

To survive a Rule 12(b)(6) motion, Plaintiffs need only allege facts that, if true, state a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor. *Hernandez v. Causey*, 124 F.4th 325 (2024). At this early stage, Plaintiffs are not required to prove their claims, only to plausibly allege facts supporting it.

Plaintiffs have alleged in detail that the City of Mandeville treated them arbitrarily and inconsistently compared to other applicants and imposed newly invented standards solely for the purpose of denying the Sucette Harbor project. Plaintiffs' allegations, if true, establish that they were intentionally treated differently from others similarly situated and that there is no rational basis for the differential treatment.

The City's denial of Plaintiffs' application followed years of official recognition that the site was designated for high-density mixed-use development and multiple approvals by planning

staff. The City's ultimate reversal was not grounded in legitimate land use policy, but rather political opposition and invented constraints never previously applied.

The Fifth Circuit has acknowledged the viability of class-of-one equal protection claims where a plaintiff plausibly alleges intentional, irrational treatment. In *Villafranca v. United States*, 587 F.3d 257, 261–62 (5th Cir. 2009), the court recognized that a plaintiff may state a valid equal protection claim by alleging that they were treated differently from others similarly situated without a rational basis. Although *Villafranca* involved selective enforcement of immigration laws, the Court's reasoning applies equally in zoning disputes.

In *Integrity Collision Center v. City of Fulshear*, No. H-19-2943, 2020 WL 7046857, at *5–6 (S.D. Tex. Dec. 1, 2020), the court denied a motion to dismiss where the plaintiff alleged that the city applied sign ordinances selectively to prevent a business from advertising. The court found that these allegations plausibly stated a class-of-one equal protection claim because they alleged intentional, irrational discrimination.

Likewise, in *Wood v. City of Utica*, 890 F.3d 273, 285 (2d Cir. 2018), the Second Circuit reversed dismissal of an equal protection claim where the plaintiff alleged the city singled out his property for enforcement action that it did not apply to others. The court emphasized that "a plaintiff is not obligated to identify actual instances where others were treated differently at the pleading stage."

### A. The City's Argument that Specific Comparators Must Be Identified Fails as a Matter of Law

To state a "class-of-one" equal protection claim, a plaintiff must show that they were intentionally treated differently from others similarly situated and that there is no rational basis for

the difference. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The City's assertion that Plaintiffs' class-of-one equal protection claim fails because the Complaint does not identify specific comparators misstates the law. First, the Fifth Circuit has held that comparator analysis is inherently fact-bound and is not a pleading-stage requirement. See *Qutb v. Ramsey*, 285 F. App'x 251, 258 (5th Cir. 2008) (declining to dismiss class-of-one claim at the pleading stage for insufficient comparator specificity). See also *Jennings v. City of Stillwater*, 383 F. 3d 1199 (10th Cir. 2004), which held that a 12(b) motion is not appropriate to resolve the issue of comparators as long as they are plausibly allegedly.

Second, the Complaint contains numerous factual allegations regarding comparators. Among them are the following:

> The Plaintiffs were treated differently than neighboring property owners with land zoned PD.
> (¶ 57)

> The land immediately adjacent to the Plaintiffs' property is approximately 80 acres, and it is zoned PD. The property is referred in the Comprehensive Plan as the Pre-Stressed site. The property owners of the Pre-Stressed site did not have their property re-zoned during the application for the Port Marigny project. The land has not been re-zoned currently to a traditional neighborhood development ("TND") because the project has not been built.
> (n.4, following ¶ 57)

> The City Council intentionally treated the Development differently from others similarly situated and there is no rational basis for the difference in treatment, having approved prior developments on the same site at much higher residential densities, having approved higher residential densities on adjacent properties, and having approved commercial uses on nearby tracts.
> (¶ 85)

> For years, marina owners on the east side of Mandeville have been allowed to leave sunken vessels in waterways and to not repair their properties. This is apparently the result of ambiguous provisions in the CLURO addressing

> non-use.
> (¶ 133)
>
> Nonetheless, on or about July 12, 2023, the Defendants, including Jason Zuckerman in his individual capacity, purposely and intentionally treated the Plaintiffs' proposed marina completely differently than other marinas in the City limits.
> (¶ 133)
>
> Zuckerman even initially proposed that if sunken vessels were not removed from the Sucette Harbor marina in ten (10) days, then the Plaintiffs would lose the conditional use permit for the entire site. Such a draconian penalty does not exist for any other marina in Mandeville.
> (¶ 134)
>
> The Defendants drafted new provisions or legislation applicable to Sucette Harbor that do not apply to any other marinas in Mandeville.
> (¶ 135)

In *Kise v. City of Galveston*, 67 F.4th 329, 336 (5th Cir. 2023), the court emphasized that whether comparators are similarly situated is "generally a factual issue for the jury." In *Priester v. Lowndes County*, 354 F.3d 414, 424 (5th Cir. 2004), the Fifth Circuit affirmed that a class-of-one plaintiff may proceed without naming specific comparators in the complaint. This principle is consistent across circuits. The Eighth Circuit in *Copeland v. Locke*, 613 F.3d 875, 880 (8th Cir. 2010), reversed dismissal of a class-of-one claim, holding that "the complaint need not identify specific comparators if it plausibly alleges differential treatment."

These factual allegations, taken as true, describe an intentional campaign to single out Plaintiffs for adverse treatment which under binding precedent is more than sufficient to proceed beyond the pleading stage. The Complaint contains sufficient factual material regarding comparators and the City's argument to the contrary is without merit.

### B. Plaintiffs Plausibly Allege Irrational and Unequal Treatment

The City alleges that Plaintiffs have not plausibly alleged that the City acted with animus or lacked a rational basis. A plaintiff does not need to plead actual animus if they allege facts showing arbitrary or irrational differential treatment. In *Willowbrook*, the Supreme Court upheld a class-of-one claim based only on the allegation that the government demanded a greater easement from the plaintiff than from others, without justification. The Supreme Court allowed the plaintiff to proceed on a class-of-one theory finding that allegations of irrational and wholly arbitrary treatment were sufficient to state a claim for relief under equal protection analysis.

In the Fifth Circuit, a plaintiff may overcome any presumption of rationality by alleging facts negating any legitimate purpose. *Stotter v. Univ. of Texas at San Antonio*, 508 F. 3d 812, 824 (5th Cir. 2007). Below are some specific examples found in the Complaint alleging irrational and unequal treatment of the Plaintiffs.

> 1. Imposing a "sunken vessel penalty" as a justification for rezoning, despite no such requirement or precedent in the City's ordinances. (Complaint ¶¶ 19–24)
>
> 2. Arbitrarily asserting that the property must be rezoned to PRD, despite consistent PD designation in public records. (Complaint ¶¶ 43–45)
>
> 3. Inventing a 50-unit density limit not based on any law, ordinance, or prior planning precedent. (Complaint ¶¶ 42–43)
>
> 4. Applying new and unauthorized criteria for denial after nine public hearings in which the project was repeatedly revised to meet concerns. (Complaint ¶¶ 39–41)
>
> 5. Councilman Zuckerman's public misrepresentations regarding the zoning and planning history of the property. (Complaint ¶¶ 58–60)

> 6. The Council's abrupt reversal and denial of the project despite prior indications of compliance and support from city staff. (Complaint ¶¶ 104–105)
>
> 7. Allowing other large-scale waterfront developments to proceed without the same conditions or scrutiny. (Complaint ¶ 135)

These allegations taken as true, allow the Court to reasonably infer irrational, intentional discrimination without a rational basis, and more than satisfy *Iqbal* and *Twombly* pleading standards.

### C. The City's Argument that the Equal Protection Clause Does Not Protect Business Interests from Zoning Decisions is Incorrect

The City argues that the Plaintiffs' claim is merely a disguised challenge to land-use decisions, not an actionable equal protection claim. However, courts routinely allow class-of-one equal protection claims in the context of land use. See *Willowbrook,* where the plaintiff challenged the village's demand for a larger easement. Also see *Integrity Collision Ctr v. City of Fulshear*, 837 F. 3d 581, 587-88 (5th Cir. 2016) (zoning reclassification of business supported class-of-one claim), and *Innovative 3D Technologies, LLC v. Ohio Bureau of Worker's Comp*, 2020 WL 7647530 (S.D. Ohio Dec. 23, 2020) (equal protection claim allowed where plaintiff alleged selective enforcement of zoning code). The equal protection clause applies to municipal land-use decisions where a plaintiff alleges irrational or discriminatory treatment. The City's contention that zoning decisions are immune from equal protection scrutiny contradicts clear precedent.

### III. PLAINTIFFS MOVE FOR LEAVE TO AMEND IF THE COMPLAINT IS FOUND TO BE DEFICIENT

Should the Court find the Complaint deficient in any respect, Plaintiffs move for leave to amend pursuant to Fed. R. Civ. P. 15(a)(2). The Fifth Circuit mandates liberal allowance of

amendments. See *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir. 1997) ("Rule 15(a) evinces a bias in favor of granting leave to amend."); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Leave to amend should be granted unless there is a substantial reason to deny it. *Rolf v. City of San Antonio*, 77 F. 3d 823 (5th Cir. 1996).

The factors supporting the denial of amendment are undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the opposing party or futility of amendment. *Wright & Miller*, 6 Fed. Prac. & Proc. Civ. § 1487 (3d ed.) However, none are present in this matter. Plaintiffs have not unduly delayed this matter, have not engaged in bad faith, have not repeatedly failed to cure deficiencies in the Complaint, and no prejudice will result to the City if amendment is permitted. If thought to be necessary, Plaintiffs can provide more detail with an Amended Complaint concerning comparator developments, communications with City officials, and internal inconsistencies in the zoning application process. Leave to amend should be granted in the interest of justice.

**VI. CONCLUSION**

The City of Mandeville's second Rule 12(b)(6) motion is a procedurally barred and substantively meritless attempt to relitigate issues that were—or should have been—raised in its initial motion. Rule 12(g)(2) explicitly prohibits successive motions that raise defenses available but omitted from a prior motion. The City's failure to challenge Plaintiffs' equal protection claim in its first motion, which was fully briefed and adjudicated, forecloses this second bite at the apple.

Even if this Court were to consider the merits, Plaintiffs have pled a textbook class-of-one equal protection claim. The Complaint outlines in meticulous detail how the City, led by individual

council members acting outside the bounds of constitutional and statutory authority, treated Plaintiffs in an arbitrary and discriminatory manner not applied to similarly situated landowners. Plaintiffs were subjected to fabricated criteria, shifting procedural rules, and hostile political targeting, while adjacent and comparable developments received materially different and preferential treatment.

The Fifth Circuit and courts across the country have consistently held that such allegations are sufficient to state a claim under the Equal Protection Clause, even absent identification of specific comparators at the pleading stage. Plaintiffs have gone further than the law requires, naming multiple comparator properties and detailing the irrational and disparate treatment they received.

For all these reasons, the City's motion must be denied. Should the Court find any pleading deficiency, Plaintiffs respectfully request move to amend under Rule 15(a), which is to be "freely given when justice so requires."

Respectfully submitted:

| | |
|---|---|
| RIESS LEMIEUX, LLC | JONES FUSSELL, LLP |
| /s/ Michael R.C. Riess | /s/ John R. Walker |
| Michael R. C. Riess (#2073) | John R. Walker (#2165) |
| Johanna Elizabeth Lambert (#33227) | Thomas H. Huval (#21725) |
| 1100 Poydras Street, Suite 1100 | P.O. Box 1810 |
| New Orleans, LA 70163 | Covington, LA 70434 |
| Telephone: (504) 581-3300 | Telephone: (985) 892-4801 |
| Facsimile: (504) 581-3310 | Facsimile: (985) 235-4327 |
| E-Mail: MRiess@RLLaw.com | Email: johnwalker@jonesfussell.com |
| E-Mail: JLambert@RLLaw.com | Email: thuval@jonesfussell.com |
| ***Attorneys for Woodward Harbor L.L.C. and LSU Health Foundation New Orleans*** | ***Attorneys for LSU Health Foundation New Orleans*** |

**CERTIFICATE OF SERVICE**

    I hereby certify that all parties have been served with this pleading via ECF this 3rd day of June, 2025.

                                                /s/ John R. Walker