## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WOODWARD HARBOR L.L.C., ET AL.**                    **CIVIL ACTION**

**VERSUS**                                                          **NO. 23-5824**

**CITY OF MANDEVILLE, ET AL.**                        **SECTION "O"**

## <u>ORDER AND REASONS</u>

Before the Court is the motion[1] of Defendant the City of Mandeville to dismiss the remaining claims that Plaintiffs Woodward Harbor L.L.C. and LSU Health Foundation New Orleans assert against it under Fed. R. Civ. P. 12(b)(6). After the Mandeville City Council unanimously voted against the Sucette Harbor Project—a mixed-use development slated for the shores of Lake Pontchartrain—the developer (Woodward Harbor) and the landowner (LSU Health) sued the City of Mandeville and City Councilman Jason Zuckerman under 42 U.S.C. § 1983 and Louisiana law. The Court dismissed with prejudice all claims against Zuckerman because he enjoys qualified immunity. The Court also dismissed with prejudice Plaintiffs' federal and state takings claims and federal due process claims against the City.

The City of Mandeville now brings a second motion to dismiss Plaintiffs' remaining equal protection claim asserted via Section 1983. For the following reasons, the Court **GRANTS** the motion.

---

[1] ECF No. 88.

## I.    BACKGROUND

The facts of this case have been recounted in detail in the Court's orders on the two prior motions to dismiss.[2] The Court re-summarizes those facts as relevant here.

This regulatory-takings case arises from the Mandeville City Council's 5–0 vote against an ordinance approving the Sucette Harbor Project—"a planned development along the shores of Lake Pontchartrain" that originally envisioned an 82-room hotel, 201 age-restricted apartments, a restaurant, and a 103-boat marina.[3] LSU Health owns the lakefront land slated to serve as the site for the Sucette Harbor Project.[4] Woodward Harbor leases that land from LSU Health.[5]

The Sucette Harbor Project was evaluated under Mandeville's Comprehensive Land Use Regulations Ordinance (the "CLURO").[6] One relevant zoning designation under the CLURO is "Planned District" or "PD."[7] There are four subcategories of Planned District zoning under the CLURO, but only two are directly relevant to the Sucette Harbor Project: Planned Residential District ("PRD") and Planned Combined Use District ("PCUD").[8] The City treated the Sucette Harbor Project site as being zoned PRD, such that only residential uses would be allowed absent a zoning change.[9]

According to the CLURO, the Planned District zoning designation aims "to provide for an improved level of aesthetics, safety and environmental sensitivity and

---

[2] ECF Nos. 69 & 70.
[3] ECF No. 1 ¶ 19.
[4] ECF No. 1-5 at 1, 3.
[5] ECF No. 1
[6] *Id.* ¶ 16.
[7] ECF No. 16-3 at 13 (§ 7.5.15.1).
[8] *Id.*
[9] ECF No. 16-4 at 5; ECF No. 16-2 at 3.

design flexibility in conjunction with a site plan review procedure for the approval of residential, commercial, industrial or a combination of these uses on one unified development site[.]"[10] In line with that aim, "[a]ll uses permitted in the Planned District are conditional uses subject to the procedural requirements for Conditional Use Permits and Planned District Zoning[.]"[11] The upshot is that no use is permitted in property zoned Planned District until this process has run its course:

- Filing an "Application[ ] for Conditional Use Permits and Planned District zoning approval[ ] . . . with the Planning Director."[12]

- Public hearings on the application before the City of Mandeville Planning and Zoning Commission.[13]

- Recommendation by the Planning and Zoning Commission to the Mandeville City Council as to the disposition of the application.[14]

- Public hearings on the application before the City Council.[15]

- City Council approval or denial of the application.

- If the application is approved, it is enacted by ordinance.[16]

- If the application is denied, the applicant must wait a year before re-applying "for the same or substantially the same Special Use on the same or substantially the same site."[17]

In August 2022, on behalf of LSU Health, Woodward Harbor proposed the Sucette Harbor Project in an application for a planned district and conditional-use approval permit submitted to the Mandeville Planning and Zoning Commission.[18]

---

[10] ECF No. 16-3 at 13 (§ 7.5.15.1).
[11] *Id.* at 13 (§ 7.5.15.2).
[12] *Id.* at 3 (§ 4.3.3.4).
[13] *Id.* at 4 (§ 4.3.3.5).
[14] *Id.* at 6 (§ 4.3.3.10).
[15] *Id.* (§ 4.3.3.11).
[16] *Id.* at 14 (§ 7.5.15.3).
[17] *Id.* at 2 (§ 4.3.2.13).
[18] ECF No. 1-5 at 1; ECF No. 1 ¶ 49.

As relevant to the motion before the Court, the Mandeville Planning and Zoning Commission treated Woodward Harbor's application as a request for a zoning change—from PRD to PCUD—and as a request for approval of conditional uses to allow, among other things, administrative and business offices, multi-family residential development, a hotel, a restaurant, general retail sales, and a marina.[19]

The Planning and Zoning Commission held six public hearings on the Sucette Harbor Project, stretching from September 2022 to mid-April 2023.[20] By a 4–3 vote, the Planning and Zoning Commission recommended that the City Council approve the application, with three conditions: (1) the plans would include a "pedestrian and bike path"; (2) "[t]he landscaping is inspected by the City to ensure health and viability"; and (3) "[t]he plans are reviewed by the City's Design Review Committee."[21]

Consistent with the CLURO, the Planning and Zoning Commission reported its approval recommendation to the five-member Mandeville City Council in mid-April 2023.[22] For the Council's consideration, Sucette prepared a proposed ordinance—Ordinance 23-16.[23] If passed, Ordinance 23-16 would have conditionally approved the plan for the Sucette Harbor Project; required the property to be re-zoned PCUD; and granted a conditional-use permit for the development of the entire site.[24]

---

[19] ECF No. 16-4 at 5; ECF No. 16-2 at 3.
[20] ECF No. 1 ¶ 51.
[21] ECF No. 16-4 at 5.
[22] ECF No. 1 ¶ 51; ECF No. 16-4 at 5.
[23] ECF No. 16-4 at 1.
[24] *Id.*

From May to September 2023, the City Council held nine public hearings on whether to approve Ordinance 23-16 and thus the Sucette Harbor Project.[25] During those hearings, the Council concluded that the property needed to be rezoned PCUD because the site was zoned PRD (allowing only residential uses), and the Sucette Harbor Project proposed both residential and commercial uses.[26] For its part, Plaintiffs allege that the Council's conclusion was wrong: Plaintiffs say the site was "already zoned PD" and so no re-zoning should have been required.[27] Plaintiffs add that the Council's designation of the property as PRD "false[ly] . . . implied that development on the site was limited to residential uses" and "poisoned the public debate."[28]

Plaintiffs lodge assorted complaints about the City Council hearings. According to Plaintiffs, those hearings featured "uncontrollable, irrational debate," with councilmembers expressing "personal opinions regarding the underlying land use regulations";[29] councilmembers "could not even agree on the proper interpretation of procedural rules, including Robert's Rules of Order";[30] and one particular hearing "was utter chaos and a complete violation of Louisiana's laws on open meetings."[31]

On September 5, 2023, the Mandeville City Council unanimously voted against Ordinance 23-16—"kill[ing]" the Sucette Harbor Project.[32] Section 4.3.2.13 of the

---

[25] ECF No. 1 ¶ 53.
[26] ECF No. 16-4 at 10.
[27] ECF No. 1 ¶¶ 36–39.
[28] *Id.* ¶ 39.
[29] *Id.* ¶¶ 58–58 (quotation omitted).
[30] *Id.* ¶ 60.
[31] *Id.*
[32] *Id.* ¶ 72.

CLURO barred Plaintiffs from re-applying "for the same or substantially the same Special Use on the same or substantially the same site" for a year.[33] That one-year period has expired, but there is nothing in the record before the Court indicating that Plaintiffs have formally re-applied for a conditional-use approval permit.

Plaintiffs sued a month after the vote.[34] Their complaint asserts assorted claims against the City and Zuckerman under federal and Louisiana law. The Court granted in full Defendant Zuckerman's motion to dismiss with prejudice. The Court found Zuckerman enjoyed qualified immunity as to all claims.[35]

As for the City of Mandeville, the Court granted in part and denied in part the City's motion to dismiss.[36] Plaintiffs' complaint brought eight counts against the City: two counts of various forms of declaratory relief (counts 1 and 2); a federal regulatory-takings claim (count 3); a Louisiana-law regulatory-takings claim (count 4); a substantive due process claim (count 5); a procedural due process claim (count 6); an equal protection claim (count 7); and a Section 1983 claim (count 8). The City argued that Plaintiffs' claims were unripe and sought dismissal under Rule 12(b)(1). The City also sought dismissal of several of the counts under Rule 12(b)(6). The Court found the claims were ripe and denied the City's motion to dismiss under Rule 12(b)(1). The Court granted in part, however, the City's motion to dismiss for failure to state a claim under Rule 12(b)(6) and dismissed with prejudice counts 3, 4, 5, and 6.

---

[33] ECF No. 16-3 at 2 (§ 4.3.2.13).
[34] *See generally* ECF No. 1.
[35] ECF No. 69.
[36] ECF No. 70.

The City had not argued for the dismissal under Rule 12(b)(6) of the equal protection claim.[37] The Court accordingly refused to dismiss that claim. Because Section 1983 is the means for enforcing Plaintiffs' claims for alleged federal constitutional violations, that "claim" survived insofar as there was a surviving equal protection claim for that underlying violation of federal law. *See Winder v. Gallardo*, 118 F.4th 638, 647 (5th Cir. 2024). Finally, the Court refused to dismiss counts 1 and 2 for declaratory relief because there was a surviving constitutional claim and because Plaintiffs' requests for declaratory relief appeared distinct from their requests for compensatory damages. *See* 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction," the Declaratory Judgment Act allows a federal court to "declare the rights and other legal relations of any interested party seeking such declaration[.]"); *Braidwood Mgmt., Inc., v. EEOC*, 70 F.4th 914, 932 (5th Cir. 2023) (explaining the Declaratory Judgment Act does not create an independent cause of action; it is purely remedial).

Plaintiffs now bring a second Rule 12(b)(6) motion to dismiss for the remaining constitutional claim—the alleged equal protection violation—and derivative section 1983 claim. The Court previously summarized Plaintiffs' equal protection claim as follows:

> [Plaintiffs] allege[] that Zuckerman and the City violated [their] rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by "purposely and intentionally treat[ing] [their] proposed marina completely differently than other marinas in the city limits." In support, [Plaintiffs] allege[] that "marina owners on the east side of Mandeville have been allowed to leave sunken vessels in

---

[37] ECF No. 88 (the City admitting it "did not address the inadequacy of Plaintiffs' pleadings with respect to their purported equal protection claim" in its first motion to dismiss).

waterways and to not repair their properties." According to [Plaintiffs], the City and Zuckerman "inserted onerous provisions surrounding the proposed marina that would prevent any financing of the project," including a "draconian penalty" for sunken vessels not timely removed that "does not exist for any other marina in Mandeville."[38]

Plaintiffs oppose the City's motion to dismiss on several grounds. First, Plaintiffs contend the motion is procedurally barred by Fed. R. Civ. P. Rule 12(g)(2). Second, Plaintiffs argue they have adequately stated an equal protection claim. Plaintiffs contend specific comparators are unnecessary and that even if comparators are necessary, they have adequately pled such comparators. Finally, Plaintiffs assert they plausibly alleged irrational and unequal treatment.

The Court considers the parties' arguments in turn. The Court notes at the outset that Plaintiffs have submitted an opposition brief replete with erroneous and hallucinated citations to non-existent caselaw, as discussed in further detail *infra*.

## II.   LEGAL STANDARD

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint that does not satisfy Rule 8(a)(2)'s pleading standard fails to state a claim upon which relief can be granted. *See generally* FED. R. CIV. P. 12(b)(6). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of

---

[38] ECF No. 70 at 12-13 (citing ECF No. 1 ¶¶ 131-37).

the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although '[courts] accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff, conclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true.'" *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quoting *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023)).

## III.  ANALYSIS

### A.  Defendant's Successive Rule 12(b)(6) Motion

First, the question of whether the Court can procedurally rule on the merits of this motion. This Court has already heard a motion to dismiss filed by the City and held that certain of Plaintiffs' claims survived that motion to dismiss. Nevertheless, the City asserts it is not yet required to answer Plaintiffs' complaint and can file a second motion to dismiss that raises new grounds for dismissal of the remaining

claims.[39] Plaintiffs disagree. They argue that Fed. R. Civ. P. 12(g) procedurally bars a successive Rule 12(b)(6) motion when that defense was available but not asserted in a prior motion.

On the plain text of the Federal Rules of Civil Procedure, Plaintiffs appear to be correct. Rule 12(g)(2) states that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Rule 12(h)(2),[40] in turn, provides that a motion to dismiss for failure to state a claim "may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under rule 12(c); or (C) at trial."[8] Rule 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial."[9] The plain text of rule 12(h)(2) does not contemplate any additional circumstances, other than those three scenarios, under which a defendant may file a successive motion to dismiss for failure to state a claim. Many circuits accordingly read Rule 12 to prohibit the filing of successive Rule 12(b)(6) motions where a defense was previously available. *See, e.g.*, *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 320–21 (3d Cir. 2015) (concluding a district court cannot consider a successive Rule 12(b)(6) motion because the exemptions articulated in Rule 12(g)(2) did not apply to that motion); *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 317-18 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*, 587 U.S. 273 (2019) (same);

---

[39] As noted, the City's first Rule 12(b)(6) motion to dismiss did not assert any arguments as to the equal protection claim.

[40] Rule 12(h)(3) provides that the court "must" dismiss the action if it determines "at any time that it lacks subject matter jurisdiction," and thus is inapplicable here.

*Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 771 F.3d 697, 702–04 (10th Cir. 2014) (same).

The Fifth Circuit, however, has held to the contrary.[41] In *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, it explained that "Rule 12(h)(2) explicitly excepts from the consolidation requirement motions based on the defense of failure to state a claim upon which relief can be granted." 512 F.3d 137, 141 (5th Cir. 2007). And in *Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trs.*, the Fifth Circuit confirmed that *Belo* did not rely on any procedural quirk of that case specifically: "[i]nstead, we said simply that Rule 12(h)(2) allows the filing of a second [Rule 12(b)(6)] motion." 855 F.3d 681, 686 (5th Cir. 2017). District courts within this circuit have thus consistently followed the Fifth Circuit's binding precedent to hold that successive Rule 12(b)(6) motions are permissible. *See, e.g.*, *Standfield v. St. Ann Lodging, LLC*, 2019 WL 1199760, at *3 (E.D. La. Mar. 14, 2019) ("... the Fifth Circuit has ruled that, pursuant to Rule 12(h)(2), a defendant is permitted to file successive motions to dismiss for failure to state a claim under Rule 12(b)(6)."); *Aziz v. MMR Grp., Inc.*, 530 F. Supp. 3d 644, 649 (M.D. La. 2019) ("Plaintiff asks the Court to ignore MMR's motion because MMR has already filed a motion to dismiss and did not raise in that motion a failure-to-state-a-claim defense. The argument finds support in the text of Federal Rule of Civil Procedure 12 but not in precedent."); *Muslow v. Bd. of*

---

[41] The same is true of the Seventh Circuit. *See Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012) ("Rule 12(g)(2) does not prohibit a new Rule 12(b)(6) argument from being raised in a successive motion.").

*Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, 2020 WL 6483134, at \*7 (E.D. La. Nov. 4, 2020) (same).

Accordingly, despite the text of Rule 12, the Court will consider Defendant's successive motion to dismiss for failure to state a claim. The Court notes in *Doe*, the Fifth Circuit acknowledged that "even if Rule 12(h)(2) should not be interpreted this way, there was no harm in allowing the second motion." *Doe*, 855 F.3d at 686. That is because Rule 12 permits a defendant to raise new failure-to-state-a-claim defenses in a Rule 12(c) motion for judgment on the pleadings. *Id*. Thus, to the extent the Fifth Circuit's interpretation of Rule 12 diverges from its text, this Court alternatively construes the City's successive Rule 12(b)(6) motion as a Rule 12(c) motion for judgment on the pleadings. *See also Muslow*, 2020 WL 6483134 at \*7 (explaining that "this Court can consider Defendants' 'new' arguments raised in their current motion because whether construed as a 12(b)(6) motion or a 12(c) motion, the same standard applies") (citing 5C Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, & A. Benjamin Spencer, Federal Practice and Procedure § 1367 (3d ed. 2020) ("The mere fact that these procedural defects are raised in the guise of a Rule 12(c) motion should not affect the manner by which the court determines what essentially are Rule 12(b) matters.")). The Court therefore considers the merits of the City's second Rule 12(b)(6) motion.

**B.    Plaintiffs' Section 1983 Equal Protection Claim**

Plaintiffs assert the City violated their equal protection rights under the Fourteenth Amendment when the City did not "apply the Official Zoning maps

equally to the Plaintiffs, as compared to other neighboring property owners."[42] According to Plaintiffs, the City "purposely and intentionally treat[ed] [their] proposed marina completely differently than other marinas in the city limits."[43]

The Equal Protection Clause serves "as a shield against arbitrary classifications." *Engquist v. Or. Dep't of Agr.,* 553 U.S. 591, 598 (2008). An equal protection claim "depends on either identifying a class or showing that the aggrieved party is a 'class of one.'" *Gil Ramirez Grp., LLC v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 419 (5th Cir. 2015) (citations omitted); *see also Engquist*, 553 U.S. at 601 ("[A]n equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination but instead claims that [it] has been irrationally singled out as a so-called 'class of one.'"). To establish a class of one claim, the plaintiff must show (1) it "has been intentionally treated differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citations omitted); *see also Mikeska v. City of Galveston*, 451 F.3d 376, 381 (5th Cir. 2006) ("To bring such an equal protection claim for the denial of zoning permits, the appellant must show that the difference in treatment with others similarly situated was irrational.")

### i. Similarly Situated Comparators

As for the first prong, to show it was "intentionally treated differently from others similarly situated," the plaintiff must identify such "similarly situated comparators." *Lindquist v. City of Pasadena Texas*, 669 F.3d 225, 233-34 (5th Cir.

---

[42] ECF No. 1 ¶ 106.
[43] *Id.* ¶ 133.

2012). Although there is "'no precise formula to determine whether an individual is similarly situated to comparators,'" the "plaintiff's and comparators' relationships with the ordinance at issue will generally be a relevant characteristic for purposes of the similarly-situated analysis." *Id.* (citation omitted). "An allegation that others are treated differently, without more, is merely a legal conclusion that we are not required to credit." *Rountree v. Dyson*, 892 F.3d 681, 685 (5th Cir. 2018). "The 'similarly situated' requirement must be enforced with particular rigor in the land-use context because zoning decisions 'will often, perhaps almost always, treat one landowner differently from another.'" *Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007) (quoting *Olech*, 528 U.S. at 565, 120 S.Ct. 1073 (Breyer, J., concurring)).

Plaintiffs' complaint fails to plead sufficient facts to establish it was intentionally treated differently from others similarly situated under the CLURO. Plaintiffs allege, without identifying any specific properties, that Defendants "approved prior developments on the same site at much higher residential densities" and "approved commercial uses on nearby tracts."[44] Plaintiffs also allege that Defendants "purposely and intentionally treated the Plaintiffs' proposed marina completely differently than other marinas in the City limits" and that Defendants "did not apply the Official Zoning maps equally to the Plaintiffs, as compared to other neighboring property owners."[45] These conclusory allegations fail to identify any similarly situated comparators and thus fail to adequately state an equal protection claim. *See Rountree,* 892 F.3d at 685 (dismissing plaintiff's complaint because it

---

[44] ECF No. 1 ¶ 85.
[45] *Id.* ¶¶ 133, 106.

"generally alleges that other similarly situated individuals were treated differently, but he points to no specific person or persons and provides no specifics as to their violations").

Plaintiffs' sole allegation that identifies a specific comparator is similarly inadequate. Plaintiffs allege they

> were treated differently than neighboring property owners with land zoned PD. The land immediately adjacent to the Plaintiffs' property is approximately 80 acres, and it is zoned PD. The property is referred in the Comprehensive Plan as the Pre-Stressed site. The property owners of the Pre-Stressed site did not have their property re-zoned during the application for the Port Marigny project. The land has not been re-zoned currently to a traditional neighborhood development ("TND") because the project has not been built.[46]

These allegations fail to establish that the "Pre-Stressed site" is a suitable comparator. The only similarities alleged are that the properties are adjacent and both zoned "PD." The properties are otherwise dissimilar according to the Complaint—dissimilar in size (80 acres versus approximately 23 acres) and, more importantly, dissimilar in proposed use ("traditional neighborhood development" versus a commercial development with a hotel and amenities, apartments, restaurant, and marina).[47] There is no explanation as to why the Pre-Stressed site's zoning process establishes that Plaintiffs were "intentionally treated differently from others similarly situated" when attempting to receive approval for their commercial development under the CLURO. These allegations are insufficient to establish similarly situated comparators. *See Beeler v. Rounsavall*, 328 F.3d 813, 817 (5th Cir.

---

[46] *Id.* ¶¶ 57-57 n.4.
[47] *Id.* ¶¶ 19, 50, 57.

2003) (rejecting proposed comparator store that was "located in adjacent buildings and sold the same basic items" because plaintiff was applying for his first permit rather than renewing and thus was not "similarly situated under the Code"); *Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007) (explaining the "similarly situated" requirement is "meant to be 'a very significant burden'" where "[i]t is inadequate merely to point to nearby parcels in a vacuum and leave it to the municipality to disprove conclusory allegations that the owners of those parcels are similarly situated) (quoting *Discovery House, Inc. v. Consol. City of Indianapolis,* 319 F.3d 277, 283 (7th Cir. 2003)).

### ii.  Rational Basis

Even if Plaintiffs had established a comparator to show they were "intentionally treated differently from others similarly situated," their claim would still fail under the second prong of the equal protection analysis. Plaintiffs fail to allege "there [was] no rational basis for the difference in treatment." *Village of Willowbrook*, 528 U.S. at 564.

"Under a rational basis review, a court affords governmental decisions a 'strong presumption of validity,' and will uphold a governmental decision 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Da Vinci Inv., Ltd. P'ship v. City of Arlington, Texas,* 747 F. App'x 223, 227 (5th Cir. 2018) (per curiam) (quoting *Heller v. Doe by Doe*, 509 U.S. 312, 319–20, (1993)). "As long as there is *a* conceivable rational basis for the official action, it is immaterial that it was not *the* or *a* primary factor in reaching a decision or that it

16

was not actually relied upon by the decisionmakers or that some other non-suspect irrational factors may have been considered." *Id.* (citation omitted) (emphasis in original). The "decision of a governmental body does not violate equal protection guarantees if there is any basis for the action that bears a debatably rational relationship to a conceivable legitimate governmental end." *Reid v. Rolling Fork Public Utility Dist.*, 979 F.2d 1084, 1087 (5th Cir. 1992).

The plaintiff thus has a "heavy burden" of "'negativ[ing] any reasonably conceivable state of facts that could provide a rational basis' for their differential treatment." *Lindquist v. City of Pasadena, Tex.*, 525 F.3d 383, 387 (5th Cir. 2008) (citations omitted). Any rational ground for the conduct in question will suffice to defeat the class-of-one claim. *Unruh v. Moore*, 326 F. App'x 770, 772 (5th Cir. 2009). Accordingly, courts routinely dismiss complaints where the plaintiff cannot show the reason for any allegedly differential treatment of the plaintiff under an ordinance was irrational or arbitrary. *See, e.g.*, *L & F Homes & Dev., L.L.C. v. City of Gulfport, Miss.*, 538 F. App'x 395, 402–03 (5th Cir. 2013) (ordinance's differential treatment of property depending on the use to which the property is put is not irrational and plaintiff failed to establish it was treated differently from comparators under the ordinance); *Dennis Melancon, Inc. v. City of New Orleans*, 2014 WL 1117881, at *7 (E.D. La. Mar. 19, 2014) (dismissing plaintiff's equal protection claim on a 12(b)(6) motion and noting "it is not this Court's job to evaluate the wisdom of the ordinance"); *Louisiana Cmty. Dev. Cap. Inv. Fund, Inc. v. Grambling Legends Square Taxing Dist.*, 2015 WL 1737954, at *9 (W.D. La. Mar. 16, 2015), *report and recommendation*

*adopted,* 2015 WL 1800319 (W.D. La. Apr. 16, 2015) (dismissing class of one claim with prejudice where "plaintiffs fail to set forth any argument supported by *facts* to show that the District's stated explanation for its differential treatment of plaintiffs' proposal was irrational or arbitrary") (emphasis in original).

Such is the case here. Section 4.3.3.8 of the CLURO, which provides the Review and Evaluation Criteria for the City Council to assess before granting a Conditional Use Permit or Planned District Zoning, specifically includes criteria such as "bulk and scale," of the project, "traffic," "parking," and "community aesthetics," among a host of other considerations. Plaintiffs' complaint identifies several rational bases within this framework for denial of their application: councilmembers Zuckerman and McGuire, "along with approximately 25-50 vocal and often angry residents" were concerned with traffic and density;[48] councilmembers Zuckerman and Bush were concerned with "scale";[49] and the councilmembers were generally concerned with "presumptions about the noise" and "personal aesthetic considerations" and the project's incompatibility "with the surrounding property uses."[50]

Moreover, the minutes[51] from the September 5, 2023 City Council meeting, which included a period of public debate, provide a bevy of rational reasons for the

---

[48] ECF No. 1 ¶ 65.

[49] *Id.* ¶¶ 66, 72.

[50] *Id.* ¶¶ 105, 72.

[51] ECF No. 88-2 (City Council Minutes); ECF No. 94-1 (Affidavit of Alicia Watts). Plaintiffs do not object to the City's request that the Court consider the City Council meeting minutes when ruling on the City's motion to dismiss. *See* ECF No. 97. Because Plaintiffs' complaint expressly quotes and relies on Councilmembers' statements made at the September 5, 2023 meeting, the Court considers the minutes in ruling on the motion to dismiss. *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.") Alternatively, the Court takes judicial notice of the minutes pursuant to Federal Rule of Evidence 201.

City Council's decision under Section 4.3.3.8 of the Review and Evaluation Criteria. Additional reasons provided by various councilmembers in those minutes include "concern[s] about the limited access into and out of the property"; "concerns with the impact on traffic into and out of the surrounding area during the construction phase of the project if it is approved"; "concerns with the proposed density of the project"; "potential deletion of the marina"; "scale"; incompatibility of the structures "near it or the surrounding neighborhoods"; concerns that the "event center/ballroom [would be] wholly incompatible with the adjacent residences"; "unfavorable effects of noise and nighttime activity"; among others.[52]

This host of rational reasons to deny Plaintiffs' application within the framework of the ordinance means Plaintiffs cannot show the City's denial of their application was irrational. *See Da Vinci Inv.*, 747 F. App'x at 228. The many justifications in both the complaint and the meeting minutes ensure that even if Plaintiffs could allege a suitable comparator, Plaintiffs will be unable to amend their complaint to plead facts to show the City's reasons for denial of their application were irrational. Nor do Plaintiffs even argue they could plead such facts. The Court thus finds that Plaintiffs are unable to plead facts sufficient to state a claim upon which relief can be granted. Accordingly, the Court denies Plaintiffs' request for leave to amend and dismisses Plaintiffs' Section 1983 and equal protection claims with prejudice. *See Landscape Images Ltd. v. IberiaBank Corp.*, 2024 WL 4457844, at *5

---

*See Johnson v. Bowe*, 856 F. App'x 487, 492 (5th Cir. 2021) ("[S]ince courts may take judicial notice of public records like a city council's meeting minutes, the district court also properly considered the minutes as part of the pleadings.")

[52] ECF No. 88-2.

(5th Cir. Oct. 10, 2024) (a district court need not allow amendment if such amendment would be futile: "'a bare bones motion to amend remains futile when it fail[s] to apprise the district court of the facts that [the plaintiff] would plead in an amended complaint'") (citation omitted).

## C.    Declaratory Judgment Relief

Claims for declaratory relief "are not freestanding; they must be supported by some underlying cause of action." *Reyes v. N. Tex. Tollway Auth., (NTTA)*, 861 F.3d 558, 565 n.9 (5th Cir. 2017) (citing *Harris County Texas v. MERSCORP, Inc.*, 791 F.3d 545, 552 (5th Cir. 2015) ("[T]he Declaratory Judgment Act alone does not create a federal cause of action.")); *accord Starrett v. City of Richardson*, 766 F. App'x 108, 112 (5th Cir. 2019) (per curiam) (affirming Rule 12(b)(6) dismissal of declaratory-relief request and reasoning that the request necessarily failed because the plaintiff failed to state any substantive claims). The failure of Plaintiffs' substantive claims thus dooms its remaining requests for declaratory relief.

## D.    Plaintiffs' Citation to Hallucinated Cases

The Court has chosen to ignore most of Plaintiffs' arguments brought in its response motion because many, if not all, of Plaintiffs' case citations are to cases that do not exist, or, if they do exist, incorrectly quote from or inaccurately describe its facts and holding.

For example, Plaintiffs cite to non-existent Second and Fifth Circuit caselaw[53] to argue they are not required to "identify actual instances where others were treated

---

[53] "*Wood v. City of Utica*, 890 F.3d 273, 285 (2d Cir. 2018)" and "*Qutb v. Ramsey*, 285 F. App'x 251, 258 (5th Cir. 2008)." ECF No. 97 at 7-8. Neither of these cases appear to exist. A case by the name

differently" when bringing an equal protection claim, incorrectly claiming "the Fifth Circuit has held that comparator analysis is inherently fact-bound and is not a pleading-stage requirement."[54] This is just one of many examples throughout their brief of Plaintiffs propounding erroneous legal rules based on cases that do not exist, inventing quotations that are nowhere found in the case, or inaccurately summarizing a case's facts and holdings.

Presumably, this is the result of an astonishingly careless use of generative AI. Although more typically an issue in *pro se* filings, the Court notes that this brief was signed by attorneys from two Louisiana firms. A failure by licensed attorneys to perform even a cursory check to ensure their cited caselaw actually exists is wholly unacceptable. What's more, Defendant expressly flagged Plaintiffs' citations to these non-existent cases throughout its reply brief. Yet Plaintiffs never sought leave to file a sur-reply to correct the numerous falsehoods in their brief or apologize for their errors.  This has resulted in a waste of the Court's time and resources, as well as those of Defendant and its counsel. Moreover, it undermines the integrity of the judicial process. And, of course, these hallucinated citations are violations of the signatory attorneys' obligations under Rule 11. *See* Rule 11(b)(2) ("By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that . . . the claims, defenses, and other legal contentions are warranted by existing law . . .").

---

"Qutb v. Ramsey" is found at 285 F. Supp. 33, but it is a District Court case from the District of Columbia in which the owner of an automobile sued the police for, *inter alia*, violation of his due process rights.

[54] *Id*. at 7-8.

The Court notes that numerous courts around the country have sanctioned attorneys and *pro se* litigants for such careless behavior. *See, e.g.*, *United States v. Hayes*, 763 F. Supp. 3d 1054, 1071 (E.D. Cal. 2025), *reconsideration denied,* 2025 WL 1067323 (E.D. Cal. Apr. 9, 2025) ("Courts across the country have issued sanctions against attorneys and pro se parties for submitting fictitious case citations, fictitious quotations, and related misrepresentations to the court[.]") (collecting cases); *Dubinin v. Papazian*, 2025 WL 3248187, at *2 (S.D. Fla. Nov. 21, 2025) ("Courts in this District have found that sanctions are appropriate where counsel repeatedly used artificial intelligence to cite hallucinated cases and quotations."); *Sanders v. United States*, 176 Fed. Cl. 163, 169 (2025) (noting that sanctions for "citing fake, AI-generated cases" have included "fines, requiring payment of the opposing party's fees, striking filings, dismissal of the action, and initiating disciplinary actions"). The Court will issue a separate show cause order for Plaintiffs' attorneys to appear before the Court to discuss its use of generative AI and failure to correct its numerous errors throughout its brief.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the City's Rule 12(b)(6) motion[55] to dismiss for failure to state a claim upon which relief can be granted is **GRANTED**. Plaintiffs' Section 1983 and equal protection claims are **DISMISSED WITH PREJUDICE**.

---

[55] ECF No. 88.

**IT IS FURTHER ORDERED** that Plaintiffs' requests for declaratory relief are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff Jason Zuckerman's motion[56] for entry of partial final judgment under Rule 54(b) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Proposed-Intervenor-Defendants' motion[57] to appeal/review the Magistrate Judge's order denying their motion for intervention is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the opposed motion[58] for attorney' fees on behalf of Defendants Jason Zuckerman and the City of Mandeville is **DENIED WITHOUT PREJUDICE** to be renewed after entry of final judgment.

New Orleans, Louisiana, this 5th day of February, 2026.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[56] ECF No. 81.

[57] ECF No. 83.

[58] ECF No. 75. The motion for attorneys' fees "on behalf of Jason Zuckerman and [the] City of Mandeville" was filed after the Court granted Zuckerman's motion to dismiss with prejudice. ECF No. 75. The "City join[ed] th[e] motion, as it was the City which actually paid the attorney's fees incurred in the representation of Councilman Zuckerman." The City, however, still had pending claims against it at that time. Given the relationship between the defendants and the overlapping claims and defenses in this case, the Court finds it more procedurally appropriate for any motions for attorneys' fees under Section 1988 to be brought, if they so choose, by the prevailing parties after the entry of final judgment dismissing all claims. The Court also notes that this timing sequence will alleviate Plaintiffs' concern, as outlined in their motion, that the motion for attorneys' fees was premature because the Court had not yet issued either a final judgment or a partial final judgment under Rule 54(b). *See* ECF No. 78.