**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**WOODWARD HARBOR L.L.C., ET AL.**                    **CIVIL ACTION**

**VERSUS**                                            **NO. 23-5824**

**CITY OF MANDEVILLE, ET AL.**                        **SECTION "O"**

## ORDER AND REASONS

The Court ordered Michael R. C. Riess, Johanna Elizabeth Lambert, John R. Walker, and Thomas H. Huval, counsel for Plaintiffs, to appear to show cause as to why they should not be sanctioned for failure to comply with Federal Rule of Civil Procedure 11(b)(2) by signing and filing a written opposition[1] to Defendant's motion to dismiss that contained hallucinated case citations, incorrect quotations, and false summaries of cases and legal rules. The four attorneys appeared before the Court on Tuesday, February 24, 2026 at 10:00 a.m.

## I.    BACKGROUND

On June 3, 2025, attorneys Michael R. C. Riess and John R. Walker electronically signed and filed a joint opposition[2] to Defendant City of Mandeville's motion to dismiss. Johanna Elizabeth Lambert and Thomas Huval's names were also included in the signature blocks. The motion contained citations to at least eleven cases that either did not exist or were incorrectly summarized, relied on, or quoted from. Three days later, Defendant filed a reply brief[3] specifically identifying multiple

---

[1] ECF No. 97.
[2] *Id.*
[3] ECF No. 99.

examples of non-existent caselaw in Plaintiffs' opposition. Plaintiffs took no action in response to the reply brief: they did not withdraw their opposition, file a surreply, or otherwise contend with Defendant's claim that they had cited fake authorities.[4]

On February 5, 2026, the Court issued an Order[5] dismissing with prejudice Plaintiffs' complaint for failure to state a claim upon which relief can be granted. The Court's Order noted that Plaintiffs' opposition to Defendant's motion to dismiss contained numerous examples of non-existent case citations, which the Court concluded were likely hallucinated citations arising from Plaintiffs' attorneys' use of generative AI. The Court issued an Order[6] to Show Cause requiring each of Plaintiffs' attorneys whose names appeared on the brief to file into the record a formal explanation of the presence of hallucinated and improper case citations. The Order also required the four attorneys to appear before the Court on February 24, 2026 at 10:00 a.m.

The attorneys each filed responses[7] to the Court's Order that included declarations and affidavits explaining the presence of hallucinated case citations in the opposition. In his declaration,[8] John R. Walker of Jones Fussell, LLP, confirmed that he alone was responsible for preparing and filing the joint opposition to the motion to dismiss. Mr. Walker admitted to having used generative AI tools to assist

---

[4] All four attorneys claimed not to have read the reply brief. Mr. Walker stated that he reviewed the reply (but not closely) and ultimately did not see Defendant's allegations regarding the false citations. Clearly, Defendant's reply brief should have alerted Plaintiffs' attorneys to the potential errors within their opposition and thereby prompted Plaintiffs to address the matter with the Court immediately and proactively.

[5] ECF No. 101.

[6] ECF No. 103.

[7] ECF Nos. 104, 105, 106.

[8] ECF No. 104-1.

in drafting the motion, but claimed he was new to using AI tools and unaware that the tools could generate false case citations. Mr. Walker took full responsibility for the presence of hallucinated citations in the opposition. He averred that his law partner at Jones Fussell, Mr. Huval, was on vacation without cellular service or internet access when drafts of the motion were circulated.[9] Mr. Walker had no expectation that Mr. Huval would review the motion before it was filed.[10] He also acknowledged that while he forwarded drafts of the motion to co-counsel Mr. Riess and Ms. Lambert of Riess LeMieux LLC, the group understood that the responsibility for verifying the accuracy of the motion lay entirely with Mr. Walker.[11] Mr. Huval's, Mr. Riess's, and Ms. Lambert's declarations and affidavits agreed with this version of events.[12] Each attorney was forthright in acknowledging the errors and apologizing to the Court.[13]

On February 24, 2026, the Court held a show-cause hearing to determine whether sanctions under Fed. R. Civ. P. Rule 11(b) were warranted in this matter.[14]

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 11 governs the signing of pleadings, motions, and other papers, representations to the Court, and sanctions. Rule 11(b) states that

> (b) By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the

---

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] ECF Nos. 105-1, 106-2, 106-3. In addition to submitting their affidavits, Mr. Riess and Ms. Lambert retained outside law firm Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, to prepare a formal response to the Court's show-cause order. ECF No. 106.

[13] ECF Nos. 104-1, 105-1, 106-2, 106-3.

[14] ECF No. 110.

person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . .

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]

Pursuant to Rule 11(c)(1), "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."

In determining whether an attorney has complied with Rule 11, the standard under which he is judged is "an objective, not a subjective, standard of reasonableness." *Snow Ingredients, Inc. v. Snowizard, Inc.*, 833 F.3d 512, 528 (5th Cir. 2016) (citing *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 802 (5th Cir. 2003)). "'[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus . . . streamline the administration and procedure of the federal courts." *Cordova v. Univ. Hosp. & Clinics, Inc.*, 92 F.4th 266, 273 (5th Cir. 2024) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)). A lawyer who signs a brief "violates Rule 11 if he fails to conduct a reasonable inquiry into the law and facts underlying his motion[.]" *Walker v. City of Bogalusa*, 168 F.3d 237, 241 (5th Cir. 1999). "[A] litigant's obligations with respect to the contents of these papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." FED. R. CIV. P. 11

4

Advisory Committee Note to 1993 Amendment. "An attorney's good faith is [not] enough to protect [her] from Rule 11 sanctions." *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1024 (5th Cir. 1994).

## III.    ANALYSIS

The problem of AI-fabricated case citations is well-documented throughout the judiciary, including in this circuit. *See, e.g.*, *Fletcher v. Experian Info. Sols., Inc.*, 2026 WL 456842, at *2 (5th Cir. Feb. 18, 2026) ("Regrettably, despite numerous news stories, CLE presentations, scholarly articles, and judicial entreaties, AI-hallucinated case citations have increasingly become an even greater problem in our courts, and the problem shows no sign of abating.") (collecting cases). "To ethically use generative AI in the practice of law—which we do not dispute can be helpful if done properly and carefully—a lawyer must 'ensure that the legal propositions and authority generated are trustworthy.'" *Id.* (citation omitted). "Failure to do so 'abdicate[s] one's duty, waste[s] legal resources, and lower[s] the public's respect for the legal profession and judicial proceedings.'" *Id.* (citation omitted) (alteration in original).

In this case, one attorney has candidly admitted to the Court that he alone was responsible for using generative AI technology to draft the opposition motion without verifying the accuracy of the citations.[15] In doing so, Mr. Walker failed in his obligation to conduct a reasonable inquiry into the law and facts underlying Plaintiff's brief. *See City of Bogalusa*, 168 F.3d at 241. The Court thus finds that Mr. Walker violated Rule 11(b)(2) by citing to fabricated AI-generated cases and by "fail[ing] to

---

[15] ECF No. 104-1.

determine that the argument[s] []he made [were] 'legally tenable.'" *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024) (quoting *Cooter & Gell*, 496 U.S. at 393). Although the Court accepts Mr. Walker's representations that he was unaware of AI's potential for errors when he filed the brief, the Court is troubled that Mr. Walker, a long-time practicing attorney, lacked knowledge of an issue so well-publicized in the legal community. The Court does, however, acknowledge and appreciate Mr. Walker's unabashed candor and regret regarding his lack of diligence in this situation. The Court further recognizes that Mr. Walker has agreed to repay his clients the fees he earned in drafting the opposition brief.

As for the other three attorneys whose signatures appeared on the brief, the Court accepts their representations that they were not meaningfully involved in preparing the brief, were unaware that Mr. Walker had used generative AI to draft the brief, and, because of the division of labor among the attorneys, relied upon Mr. Walker's case citations and legal analysis. The Court reminds the attorneys, however, that when delegating brief-drafting responsibility to a cocounsel, the attorneys must still comply with Rule 11 when they act as cosigners to the brief. *See Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 126 (1989) ("[T]he purpose of Rule 11 as a whole is to bring home to the individual signer his personal, nondelegable responsibility."); FED. R. CIV. P. 11 Advisory Committee Note to 1993 Amendment ("The person signing, filing, submitting, or advocating a document has a nondelegable responsibility to the court, and in most situations is the person to be sanctioned for a violation."). Particularly when engaging in the joint representation of a client with

counsel from another law firm, attorneys are wise to adopt practices and procedures to ensure cocounsel shares a commitment to using research tools responsibly and abiding by Rule 11's strictures. Here, the Court recognizes and commends the Plaintiffs' law firms for working to strengthen their firms' internal controls in the wake of this show-cause hearing—including drafting AI procedures, mandating responsible practices by cocounsel, and training employees on dangers of improper AI usage—to avoid a situation like this in the future.

When considering sanctions under Rule 11, the Fifth Circuit instructs district courts to "utilize the sanction that furthers the purposes of Rule 11 and is the least severe sanction adequate to such purpose." *Jenkins v. Methodist Hosps. of Dallas, Inc.*, 478 F.3d 255, 265 (5th Cir. 2007) (citation omitted). The Court finds that judicial admonition is a sufficient sanction here and declines to sanction Mr. Riess, Ms. Lambert, and Mr. Huval.

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that John R. Walker is sanctioned personally for his conduct in this case in the amount of $1,000. The sanction is to be paid by Tuesday, March 10, 2026 at 5:00 p.m. to:

> Clerk, United States District Court Eastern
> District of Louisiana 500 Poydras Street,
> Room C151 New Orleans, Louisiana 70130

**IT IS FURTHER ORDERED** that Mr. Walker attend 2 hours of Continuing Legal Education on the topic of Generative A.I. by **December 31, 2026**. Mr. Walker must file proof of CLE attendance with the Court by **December 31, 2026**.

New Orleans, Louisiana, this 5th day of March, 2026.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE